The CITY OF WACO, Petitioner,

v.

The CITY OF McGREGOR, Respondent.

No. B–4748.

Supreme Court of Texas.

Feb. 12, 1975.

Dissenting Opinion on Rehearing
May 7, 1975.

W. Earl Bracken, Jr., Bryan, Wilson, Olson & Stem, Lyndon Olson, Waco, for petitioner.

Amsler, Amsler & Associates, Margaret Amsler, McGregor, Haley, Fulbright, Winniford & Bice, W. C. Haley, Waco, for respondent.

McGEE, Justice.

The City of Waco (Waco) brought this action against the City of McGregor (McGregor) for declaratory judgment declaring the Annexation Ordinance No. 7058 of McGregor to be void. This ordinance was passed as an emergency measure, without publication or public hearing by the McGregor City Council on December 12, 1966. The ordinance purports to annex a strip of land 261 feet wide, beginning at a point in the east city limit line of McGregor and extending in a northeasterly direction down U.S. Highway 84, approximately five miles, at which point it extended in a northerly direction to include a 900 acre tract of land owned by McGregor and used as a municipal airport. The trial court entered a take-nothing judgment and the court of civil appeals affirmed. 510 S. W.2d 637.

We reverse the judgments of the courts below and render judgment that the Annexation Ordinance of McGregor is void.

At all relevant times McGregor is a general law city having a population of less than 5,000 inhabitants. Waco is a home rule city and there is a dispute in the record as to whether Waco's population at the relevant time was in excess of 100,000 or fell into the 50,000–100,000 classification. Regardless of the applicable population bracket, the airport and part of the stem extending out to it lie within the exclusive extraterritorial jurisdiction of Waco. The following map shows that the ordinance at-

tempts to annex a strip and the airport which lie outside the extraterritorial jurisdiction of McGregor and within the extraterritorial jurisdiction of Waco.

Article 970a, Vernon's Tex.Rev.Civ. Stat.,[1] commonly referred to as the Municipal Annexation Act, became effective August 23, 1963. It establishes certain limits on annexation and establishes extraterritorial jurisdiction of cities. Section 3, subd. A provides as follows:

"In order to promote and protect the general health, safety, and welfare of persons residing within and adjacent to the cities of this State, the Legislature of the State of Texas declares it to be the policy of the State of Texas that the unincorporated area, not a part of any other city, which is contiguous to the corporate limits of any city, to the extent described herein, shall comprise and be known as the extraterritorial jurisdiction of the various population classes of cities in the State and shall be as follows:

"(1) The extraterritorial jurisdiction of any city having a population of less than five thousand (5,000) inhabitants shall consist of all the *contiguous* unincorporated area, not a part of any other city, within one half (½) mile of the corporate limits of such city.

" . . .

"(4) The extraterritorial jurisdiction of any city having a population of fifty thousand (50,000) or more inhabitants, but less than one hundred thousand (100,000) inhabitants shall consist of all

1. All statutory references are to Texas Revised Civil Statutes.

the *contiguous* unincorporated area, not a part of any other city, within three and one half (3½) miles of the corporate limits of such city.

"(5) The extraterritorial jurisdiction of any city having a population of one-hundred thousand (100,000) or more inhabitants shall consist of all the *contiguous* unincorporated area, not a part of any other city, within five (5) miles of the corporate limits of such city." (Emphasis added).

Section 7A provides as follows:

"A city may annex territory only within the confines of its extraterritorial jurisdiction; provided, however, that such limitation shall not apply to the annexation of property owned by the city annexing the same."

In City of West Lake Hills v. State ex rel. City of Austin, 466 S.W.2d 722 (Tex. 1971) this court found that the legislature has consistently required the extension of any town or city to be limited to *contiguous and adjacent* areas.

 When read together, Section 7A of the Municipal Annexation Act and *City of West Lake Hills* permit McGregor to annex all property which is within its extraterritorial jurisdiction or which it owns *so long as* the annexed land is contiguous and adjacent to its corporate limits. In the ordinance attacked here, McGregor has attempted to annex a strip of land which is neither owned by McGregor nor within its extraterritorial jurisdiction. If the annexation of this stem is invalid, then the airport, although owned by McGregor, is not validly annexed as it would not be contiguous to the corporate limits of McGregor. *City of West Lake Hills,* supra.

 It seems clear that McGregor's Annexation Ordinance No. 7058 was void when it was passed since it attempted to annex territory (the stem from its extraterritorial jurisdiction limits to the airport)

which Section 7 of the Municipal Annexation Act prohibited McGregor from annexing. Deacon v. City of Euless, 405 S.W.2d 59 (Tex.1966); State ex rel. Howard v. City of Wichita Falls, 465 S.W.2d 459 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.). McGregor does not contend otherwise. McGregor's position is that the attempted annexation has been validated by Article 974d–12, a general validating statute which became effective June 18, 1967.

Article 974d–12 applies to home rule cities with a population of 6,900 to 7,100 and to all general law cities. Section 2 provides:

"The boundary lines of all such cities and towns, including both the boundary lines covered by the original incorporation proceedings and any subsequent extensions thereof, are hereby in all things validated. No boundary extension of any kind shall be deemed invalid by failure to comply with requirements of publication, whether such requirements are imposed by statute, general law or charter, and such extensions are hereby in all things validated. In the event of multiple annexations covering the same territory, the proceedings prior in time shall prevail despite any irregularities hereby validated."

The outcome of this case thus depends on the applicability of the above validating act. The question is not one of the power of the legislature—we do not doubt that the legislature could validate an attempted annexation such as this. Rather the question here is one of construction of the validation act, whether the legislature intended to validate attempted annexations such as the one before us. Tex.Rev.Civ.Stat.Ann. art. 10, subd. 6; Calvert v. Texas Pipe Line Co., Tex., 517 S.W.2d 777 (1975).

 McGregor asserts that Article 974d–12 is a curative and remedial measure and should be given a liberal construction, relying upon City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273

(1951), and similar cases. However, McGregor overlooks the important qualification, made clear in *City of Mason,* that curative statutes are liberally construed only to effectuate the intent of the legislature in enacting them and not to other ends. City of Mason v. West Texas Utilities Co., supra; Burch v. City of San Antonio, Tex., 518 S.W.2d 540 (1975); 2 Sutherland Statutory Construction § 41.11 (4th ed. C. Sands 1973). Therefore, the rule of construction cited by McGregor does not obviate our duty to determine and apply legislative intent.

■ McGregor's interpretation of Article 974d–12 would impart to the legislature an intent to put its stamp of approval upon any conceivable annexation by any general law city, no matter how extensive or preposterous the annexation might be. We do not believe the legislature intended such a result by passing a validation act in the general terms of Article 974d–12. Rather we read Article 974d–12, as we read the validating statutes involved in *City of West Lake Hills,* supra, in the light of the traditional annexation requirements of contiguity and adjacency. As we said in *City of West Lake Hills:*

"We find no statute which has expressly permitted the creation or extension of a municipal area with intervening territory interrupting the contiguity and adjacency of the corporate area. The Legislature has repeatedly required the extension of any town or city to be limited to 'contiguous and adjacent area,' or 'territory joining the limits of any city' or 'additional territory lying adjacent to said city' or 'the adjacent territory desired to be annexed' or 'the territory contiguous to said city and proposed to be annexed'. . . . In view of the repeated requirement of adjacency in the statutes, we do not believe that the validating statutes should be construed to a different effect in the absence of specific and express provision." 466 S.W.2d 722, 729.

We reaffirm our belief expressed above that the legislature in passing a general validating statute such as Article 974d–12 did not intend to validate the annexation of noncontiguous or nonadjacent territory.

The remaining problem is to determine whether the annexation attempted by McGregor falls within the scope of Article 974d–12. There is no doubt that the entire area of the attempted annexation is contiguous to McGregor since it is touching in a geographical sense. It seems obvious that the only purpose for including the stem along Highway 84 was to make the airport contiguous to McGregor.

■ The question of adjacency is more difficult to determine. We said in State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780 (1957), that the term "adjacent" is usually accorded "the meaning of 'neighboring or close by' or 'in the vicinity of and not necessarily contiguous or touching upon.'" Adjacency is a question of law which must be determined in the context of the facts of each particular case. City of Irving v. Dallas County Flood Control District, 383 S.W.2d 571 (Tex.1964); City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d 325 (Tex.1969).

■■ It is not necessary in this case to explore the limits of adjacency since we are given some legislative guidance in our determination. The legislature anticipated that conflicting claims such as the one before us would become more frequent as cities in Texas continued to grow. To avoid such situations the legislature enacted the Municipal Annexation Act in 1963 and established the concept of extraterritorial jurisdiction to structure the growth of cities and to protect cities from intrusions by their neighbors. In keeping with the purpose of the Municipal Annexation Act, we hold that territory within the exclusive extraterritorial jurisdiction of one city is not adjacent to any other city as a matter of law. Absent specific and express provi-

sions in a validating statute, we will not presume that the legislature intended to validate such intrusions in violation of the Municipal Annexation Act.

In summary, we hold that McGregor's Annexation Ordinance No. 7058 was void when passed since it violated Sections 3 and 7 of the Municipal Annexation Act. Article 974d–12 was not intended to and did not validate the annexation of either noncontiguous or nonadjacent territory. The portion of the stem along Highway 84 which intrudes into the exclusive extraterritorial jurisdiction of Waco is not adjacent to McGregor and so McGregor's attempted annexation of that portion of the stem was not validated by Article 974d–12. Since that part of the stem is not validly annexed, the airport is not contiguous to McGregor and so McGregor's attempted annexation of the airport was not validated by Article 974d–12.

We therefore reverse the judgments of the courts below and render judgment that the City of McGregor's Annexation Ordinance No. 7058 is void.

Dissenting opinion by POPE, J., in which WALKER and DANIEL, JJ., join.

## ON MOTION FOR REHEARING

POPE, Justice (dissenting).

The former dissenting opinion is withdrawn and this is substituted in its place. I respectfully dissent for three reasons. First, the court fails to recognize the force of Article 46d–2, the Municipal Airports Act, which gives McGregor jurisdiction over its owned airport lands. Second, McGregor's prior jurisdiction is recognized by Article 965 and Article 970a. Third,

Article 974d–12 validated McGregor's annexation in any event.

### McGregor's Prior Jurisdiction

The McGregor municipal airport is within what would ordinarily be Waco's extraterritorial limits. The airport constitutes all of the annexed territory in dispute save the stem which connects it with McGregor. The majority says that the airport is subject to the extraterritorial jurisdiction of Waco, but this cannot be so. McGregor acquired its airport on October 13, 1947, long before the enactment of the Municipal Annexation Act, Article 970a, in 1963. Since McGregor's purchase of its municipal airport, it alone has possessed the jurisdiction and municipal powers over that land. The Municipal Airports Act empowers McGregor, not Waco, to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police the land. Art. 46d–2. The Municipal Annexation Act did not interrupt those prior powers of McGregor to "regulate, protect and police" its airport territory. In 1947 the airport was and continuously since then has been, by statute, under the jurisdiction of McGregor. The majority opinion leaves both cities in an awkward position. McGregor has jurisdiction under the Municipal Airports Act; Waco, by the majority opinion, has jurisdiction under the Municipal Annexation Act. In my judgment, it is Waco that is encroaching upon McGregor's statutory territory, rather than McGregor that is encroaching upon Waco's territory.

### McGregor's Annexation Valid Under Article 965

When McGregor purchased its municipal airport site, Article 965 [1] was in force, and

---

1. Art. 965. The bounds and limits of said municipality shall be and remain the same as fixed and defined by the provisions of the act of incorporation, substituted by the provisions of this Title; provided, that said limits of said corporation may be hereafter extended by adding additional territory to

the same, whenever the majority of the qualified electors of said territory shall indicate a desire to be included within the limits of said corporation in the manner provided in Article 974 of this Title; or by ordinance of the governing body of said municipality, duly passed and spread upon

that article recognized the special nature of lands owned by a municipality. That statute authorized McGregor's annexation of lands by ordinance but had the proviso, "provided that this provision shall apply only to those cities where the additional territory so added is owned by such municipalities."

The special nature of municipally owned tracts of land such as McGregor's airport was again recognized and respected by Article 970a, the Municipal Annexation Act. Section 3 of that act excluded from a city's extraterritorial jurisdiction the unincorporated area which was a part of another city.

In order to promote and protect the general health, safety, and welfare of persons residing within and adjacent to the cities of this State, the Legislature of the State of Texas declares it to be the policy of the State of Texas that the unincorporated area, *not a part of any other city,* which is contiguous to the corporate limits of any city, to the extent described herein, shall comprise and be known as the extraterritorial jurisdiction of the various population classes of cities in the State and shall be as follows . . . . (Emphasis added.)

Section 3 then lists five brackets of cities and states the distance over which each has an extraterritorial jurisdiction. In

each listing there is the phrase "not a part of any other city." Section 3, in short, declares the area which constitutes the extraterritorial area of cities, but it excludes from the extraterritorial area that property which is a part of some other city. The airport owned by McGregor was never a part of Waco's extraterritorial lands under the Municipal Annexation Act.

### Article 974d–12—Validation Act

The Legislature enacted Article 974d–12 [2] to clarify and cure the McGregor-Waco problem, but the majority fears such a result will lead to "preposterous" results in some other context. With respect, I suggest that the majority opinion presently creates the very result it says we should avoid. The majority opinion compels further litigation to determine whether McGregor or Waco has jurisdiction to "regulate," to "protect" and to "police" the annexed airport. A reasonable meaning of the validation act and one that would avoid the territorial conflict created by the majority opinion is that it intended to leave undisturbed the jurisdiction which Article 46d–2 vested in McGregor. The only way this court can avoid this conflict of jurisdiction short of giving force to the validation act is to repeal Article 46d–2, and we lack jurisdiction to do that.

the minutes thereof, describing by metes and bounds such additional territory added thereto, *provided that this provision shall apply only to those cities where the additional territory so added is owned by such municipalities.* (Emphasis added.)

2. Sec. 2. The boundary lines of all such cities and towns, including both the boundary lines covered by the original incorporation proceedings and any subsequent extensions thereof, are hereby in all things validated. No boundary extension of any kind shall be deemed invalid by failure to comply with requirements of publication, whether such requirements are imposed by statute, general law or charter, and such extensions are hereby in all things validated. In the event of multiple annexations covering the same territory, the proceedings prior in

time shall prevail despite any irregularities hereby validated.

Sec. 3. All governmental proceedings performed by the governing bodies of all such cities and towns and all officers thereof since their incorporation or attempted incorporation are hereby in all respects validated as of the date of such proceedings.

Sec. 4. The provisions of this Act shall not apply to any city or town now involved in litigation questioning the legality of the incorporation or extension of boundaries or any of the acts or proceedings hereby validated if such litigation is ultimately determined against the legality thereof; nor shall this Act be construed as validating any proceeding which may have been nullified by a final judgment of a court of competent jurisdiction.

Article 974d–12 is clear and inclusive. It validated the original boundary lines of general law cities; it validated "any subsequent extensions thereof," and it did so "in all things." Our concern is not with McGregor's original boundary lines; it is with the subsequent extensions thereof. By definition an extension is that which expands, lengthens, prolongs, enlarges, adds to or annexes. Black's Law Dictionary 694 (4th ed. 1951). An annexation is an extension. Validation of an extension which intrudes into another city's extraterritorial domain in violation of the Municipal Annexation Act was the thing which the curative statute was designed to do.

The technique employed by the majority is an unwholesome departure from the universal rule to construe remedial statutes liberally. That rule, as summarized by 2 Sutherland, Statutory Construction § 41.11, at p. 290 (4th ed. 1973) is:

Because of the beneficent policy thus served by curative legislation, to sustain the reliability of official actions and secure expectations formed in reliance thereon, they are in reason entitled to liberal construction in order to achieve full fruition of their remedial purposes.

Texas has long followed that principle which is summarized in City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273, 280 (1951):

If a statute is curative or remedial in its nature, the rule is generally applied that it be given the most comprehensive and liberal construction possible. It certainly should not be given a narrow, technical construction which would defeat the very purpose for which the statute was enacted.

In Perkins v. State, 367 S.W.2d 140 (Tex.1963), we adhered to that principle, holding:

In considering the applicability of a validating act, the Court must acknowledge the principle that even though an act of incorporation is void from its inception because of an unwarranted exercise of power, or because of an entire absence of power, the Legislature may validate such act and make it live, for what the Legislature has the power to authorize, it has the power to ratify.

The application of this principle has been the basis for upholding the validation of acts done under a prior unconstitutional special statute when validated by a general law. Marfa Independent School Dist. v. Wood, 135 Tex. 223, 141 S.W.2d 590 (Tex.Com.App.1940); State Line Consolidated School District No. 6 v. Farwell Independent School Dist., 48 S.W.2d 616 (Tex.Com.App.1932); Pyote Independent School District v. Dyer, 34 S.W.2d 578 (Tex.Com.App.1931).

Nineteen validation acts are found under Article 974d since it was enacted in 1937. They contain varying provisions and exceptions. Article 974d–2, enacted in 1950 by the 51st Legislature, used the terms "boundary lines" and "subsequent extension thereof." Those terms, either in the singular or plural, have been consistently used since that time. Articles 974d–2, 974d–4, 974d–5, 974d–6, 974d–8, 974d–11, 974d–12, 974d–13, 974d–14, 974d–15, 974d–16, 974d–17, 974d–18, and 974d–19. The terms are inclusive, clear, and have never been previously in doubt. When the Legislature has meant to limit their scope, it has always done so by exceptions stated in the statute. Some of the validation acts contain no exceptions of any kind. Except for Articles 974d–1, 974d–14, and 974d–16, all of the statutes include an exception that the boundary lines and extensions of a city will not be validated if the matters are already in litigation.

It was the 1963 enactment of the Municipal Annexation Act, Article 970a, by the 58th Legislature which introduced into the law the concept of a municipality's extraterritorial jurisdiction. Since that time, the Legislature has enacted some validation acts which expressly provided that an

overlap of another city's extraterritorial jurisdiction was not validated. For example, in 1965 the 59th Legislature enacted Article 974d–11 the first and second sections of which validated incorporation proceedings, boundary lines covered by the original incorporation and subsequent extensions. The act then in its fourth section contained an express exception that the act would not apply when an incorporation extended into the extraterritorial lands of another city:

> Sec. 4. The provisions of this Act *shall not apply* to any city or town incorporated or attempted to be incorporated from and after August 23, 1963, *which is situated in whole or in part within the extraterritorial jurisdiction of another city or town,* unless consent or permission to incorporate was obtained in the manner prescribed by Chapter 160, Article I, Acts of the 58th Legislature, Regular Session, 1963, the Municipal Annexation Act, compiled as Article 970a, Vernon's Texas Civil Statutes. (Emphasis added.)

In 1967, the 60th Legislature enacted Article 974d–12, the one which is presently before us. While that statute continued the use of the inclusive terms, "boundary lines," "subsequent extension thereof," and "in all respects," it omitted the exception concerning an encroachment upon extraterritorial jurisdiction. Significantly, in 1969 the 61st Legislature enacted two validation acts concerning boundaries and extensions. Article 674d–13, by express exception, declared that an extraterritorial overlap would not be validated as to cities within one bracket; but Article 974d–14, another bracket law, omitted the exception. In 1971, the 62nd Legislature enacted Article 974d–15 which by express exception, said that there would be no validation of an extraterritorial overlap, but omitted the exception in Articles 974d–16 and 974d–17. In 1973, the 63rd Legislature enacted Article 974d–18 without the extraterritorial ex-

ception but also enacted Article 974d–19 which included it.

The lesson we learn from these legislative examples is that for some situations, and for some brackets of cities, the Texas Legislature excepts from its validation acts any overlaps into another city's extraterritorial jurisdiction, and in other instances, it provides for the validation to extend to the original boundary lines, as well as any subsequent extension without regard to extraterritorial lands. In the instance of Article 974d–12, extensions "are hereby in all things validated," without exception concerning the overlap. From this comparison it seems apparent that the Legislature knows what problem its validation acts confront and knows when to make exceptions to their application. The majority, however, has added an exception to the validation act which the Legislature did not want.

Chief Justice Alexander addressed the question of exceptions contained in remedial statutes in the case of North Common School District v. Live Oak County Board, 145 Tex. 251, 199 S.W.2d 764 (1946). The court had before it a case in which the Supreme Court had already finally ruled that an attempted annexation of other school districts was ineffective. Thereafter, the Legislature enacted a validating act which contained no exception about annexation proceedings. This court ruled that the prior annexation, though finally adjudicated as void, was validated. See City of Deer Park v. State, 154 Tex. 174, 275 S.W.2d 77, 79 (1955); State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065 (1932). In reaching that conclusion, the court first examined and compared companion validating acts of the Legislature. Some of them contained exceptions, but, as this court then wrote, "[T]he act here under consideration contains no such exception." The court also held that if the validating act contained one exception, it would not imply another and a different one. See, Federal Crude Oil Co. v. Yount-Lee Oil

Co., 122 Tex. 21, 52 S.W.2d 56 (1932); First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S.W. 550 (1921). Likewise, Article 974d–12 contained two exceptions and surely the Legislature, if it had so intended, would have included the customary and well-known one which excluded an overlap of extraterritorial jurisdiction.

The majority opinion confuses yet another area of the law, that of adjacency. At least since this court's decision in State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780 (1957), cert. denied, 355 U.S. 603, 78 S.Ct. 533, 2 L.Ed.2d 523 (1958), the term "adjacent" has been applied in context with the problem and from case to case. See also, City of West Lake Hills v. State ex rel. City of Austin, 466 S.W.2d 722 (Tex. 1971); City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d 325 (Tex. 1969); City of Irving v. Dallas County Flood Control District, 383 S.W.2d 571, 576 (Tex.1964); State v. Camper, 261 S. W.2d 465 (Tex.Civ.App.1953, writ ref'd). We wrote in *City of Irving*:

> In that case [State v. Camper] the Court stated that the meaning of the word "adjacent" is " 'determinable principally by the context in which it is used, and the facts of each particular case, or by the subject-matter to which it is applied.' "

This rule is abandoned by the majority's new rule of adjacency:

> In keeping with the purpose of the municipal annexation act, we hold that territory within the exclusive extraterritorial jurisdiction of one city is not adjacent to any other city *as a matter of law*. (Emphasis added.)

Once willing to accept this sharp departure from our former rule, it is easy to hold that the Legislature did not intend to protect McGregor's prior jurisdiction over its airport, because it is no longer important to consider the validation act in the context of McGregor's ownership of the land for an airport, nor Article 46d–2, nor

its powers to annex such owned property under · Article 965, nor the fact that the Municipal Annexation Act preserved McGregor's rights in owned land, nor the fact that, without the validation act, both cities will continue to claim conflicting territorial rights over the same lands.

In my opinion, the judgments of the courts below should be affirmed.

WALKER and DANIEL, JJ., join in this dissent.