

# THE ATTORNEY GENERAL
# OF TEXAS

December 23, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable James S. McGrath　　　　Opinion No. JM-591
Criminal District Attorney
P. O. Box 2553　　　　　　　　　　Re: Whether a municipality may annex
Beaumont, Texas　77704　　　　　　that portion of a rural fire preven-
　　　　　　　　　　　　　　　　　　tion district lying within its extra-
　　　　　　　　　　　　　　　　　　territorial jurisdiction

Dear Mr. McGrath:

You ask the following question:

> If a home rule city consents to the creation of a
> rural fire prevention district under article
> 2351a-6, V.T.C.S., within the extraterritorial
> jurisdiction of the city, may the city sub-
> sequently annex that portion of the territory of
> the fire prevention district lying within its
> extraterritorial jurisdiction?

We are not aware of a limitation on the annexation powers of a home
rule city which would prohibit the annexation of such territory,
assuming that the charter of the city authorizes the annexation.

The right of a home rule city to annex territory is derived from
article XI, section 5, of the Texas Constitution, which grants plenary
powers and limits the powers of home rule cities only to the extent
that a power is inconsistent with the constitution or the laws enacted
by the legislature. Article 1175, section 2, V.T.C.S., expressly
grants to a home rule city the legislative power to annex additional
territory lying adjacent to the city according to the rules provided
by the city charter not inconsistent with the rules prescribed by the
Municipal Annexation Act. In 1963, the Municipal Annexation Act,
article 970a, V.T.C.S., was enacted to regulate a city's power of
annexation. See City of Port Arthur v. Jefferson County Fresh Water
Supply Dist. No. 1, 596 S.W.2d 553 (Tex. Civ. App. - Beaumont 1980,
writ ref'd n.r.e.); May v. City of McKinney, 479 S.W.2d 114 (Tex. Civ.
App. - Dallas 1972, writ ref'd n.r.e.).

The annexation powers of a city have been limited in several
ways. For instance, annexation is limited to territory adjacent to a
city and not included in the boundaries of another municipality. See

V.T.C.S. art. 1175, §2; State v. Texas City, 303 S.W.2d 780, 782 (Tex. 1957). The Municipal Annexation Act, among other things, limits annexation to territory within the city's extraterritorial jurisdiction and to areas of a certain minimum width, limits the amount of territory a city may annex in a calendar year, and imposes a restriction on the annexation of certain water and sewer districts by requiring annexation of the entire portion of the district that is outside the boundaries of the city. See V.T.C.S. art. 970a, §§7(A), 7(B), 7(B-1), 11. See also City of Wichita Falls v. State Ex. Rel. Vogtsberger, 533 S.W.2d 927 (Tex. 1976); City of Waco v. City of McGregor, 523 S.W.2d 649 (Tex. 1975); City of Port Arthur v. Jefferson County Fresh Water Supply Dist. No. 1, supra.

We find no limitations in the statutes on the annexation powers of a home rule city because the city consented to the creation of a rural fire prevention district within the city's extraterritorial jurisdiction. A city, with its broad police powers, may overlap in the territory with a special purpose entity vested with limited powers even though some of their purposes are the same. See City of Pelly v. Harris County Water Control & Improvement District No. 7, 198 S.W.2d 450 (Tex. 1946) (city may annex territory located in water control and improvement district or water conservation district); Attorney General Opinion JM-400 (1985). Article 2351a-6, V.T.C.S., which authorizes the creation of rural fire prevention districts under the provisions of section 48-d of article III of the Texas Constitution, expressly recognizes that cities may be included in a fire prevention district. V.T.C.S. art. 2351a-6, §8A.

It has been suggested that a city that consents to the creation of a rural fire prevention district to be composed in part of territory within the city's extraterritorial jurisdiction may not later withdraw a subsequently incorporated area from the district because section 14b of article 2351a-6 does not expressly authorize withdrawal by a "consenting city" whereas section 8A of article 2351a-6 refers specifically to a "nonconsenting city." It is our opinion that the provisions of section 8A that remove from a fire prevention district an area subsequently incorporated by a "nonconsenting city" do not limit the provisions in section 14b to a "nonconsenting city."

In the original enactment of article 2351a-6 in 1957, section 8A provided that if part of the area of a proposed rural fire prevention district was within the territory of an incorporated city, and a majority of the voters of the area within the city voted against creation of the district, the incorporated area could not be included in the district. Thus, at the time of creation of the district, the voters of an incorporated area determine whether the incorporated area is included in the district. In 1973, the legislature amended section 8A to add the sentence that states that

> [s]hould any nonconsenting city, town or village ever annex territory into such proposed Rural Fire Prevention District, then the Board of Fire Commissioners shall, after due notice, immediately de-annex such area from its district and shall cease to provide any further services to the residents of that area.   (Emphasis added).

Acts 1973, 63rd Leg., ch. 260, §8(a), at 609.  Chapter 93 of Acts 1985, Sixty-ninth Legislature, made the provisions of section 8A of article 2351a-6 applicable to both the incorporated territory of a city and the area within the city's extraterritorial jurisdiction.  It is our opinion that the legislature intends the term "nonconsenting city" in section 8A to describe a city where voters residing in that city or its extraterritorial jurisdiction determine that such area shall not be included in the creation of a proposed rural fire prevention district.  After voter rejection of inclusion in the district, section 8A mandates the immediate removal from the fire prevention district of any territory in the district that the city subsequently annexes.

In 1985, chapter 93 of the Sixty-ninth Legislature gave the governing body of a city participation in the inclusion of territory in a proposed district or withdrawal of territory from an existing district.  Chapter 93 added section 8B to require consent of the governing body of a city for inclusion of the city's corporate territory or extraterritorial jurisdiction in the creation of a proposed fire prevention district.  The governing body may give its written consent for inclusion or may consent by a refusal or failure to make fire protection available to the area as provided by subsections (b) and (c).  Consent of the governing body is merely preliminary consent for the creation of a proposed district in accordance with the other sections and provisions of article 2351a-6.  Without such consent, an area within the corporate limits or extraterritorial jurisdiction of a city may not be included in the proposed district.  See Acts 1985, 69th Leg., ch. 93, at 525.

Chapter 93 of the Sixty-ninth Legislature also added section 14b to article 2351a-6 to allow the governing body of a city to provide fire protection to an area within its corporate or extraterritorial jurisdiction and withdraw the area from an existing rural fire prevention district.  Section 14b provides that:

> (a)  The governing body of a city that has an area within its corporate or extraterritorial jurisdiction included within a rural fire prevention district may, on agreeing to provide fire protection to the area as provided by Section 8B of this Act . . . notify the secretary of the

board of fire commissioners in writing that the area is excluded from the district's territory.

(b)  On receipt of the notice under Subsection (a) of this section, the board shall cease to provide further service to the area, exclude the area by order from the district, and redefine the district's boundaries.

V.T.C.S. art. 2351a-6, §14b.  Section 14b does not expressly limit or qualify the cities to which its provisions apply.  Where the legislature makes no exceptions to the provisions of a statute, it is presumed that the legislature intends no exceptions.  It is well settled that exceptions in statutes are not ordinarily implied.  See Spears v. City of San Antonio, 223 S.W. 166, 169 (Tex. 1920); Stubbs v. Lowrey's Heirs, 253 S.W.2d 312, 313 (Tex. Civ. App. - Eastland 1952, writ ref'd n.r.e.); Attorney General Opinion JM-453 (1986).

We conclude that the provisions of section 14b allow the governing body of any city that has an area within its corporate limits or extraterritorial jurisdiction included in a rural fire prevention district to agree "to provide fire protection to the area as provided by section 8B" and avoid duplication of services by withdrawing the area from the district.  Cf. Attorney General Opinion JM-453 (1986) (rights of bondholders on withdrawal of territory from rural fire prevention districts).  Sections 8A and 14b are separate provisions of the rural fire prevention district act which were enacted at separate times to authorize different actions, namely (1) the voters' determination to exclude their area from a proposed district, and (2) the city governing board's decision to exclude from an existing fire prevention district an area to which the city agrees to provide fire protection. The use of the term "nonconsenting city" in section 8A relates only to a city where the voters excluded their area from the creation of a proposed rural fire prevention district and to the consequent removal from the district of territory subsequently annexed by the city.  In our opinion, the legislature does not intend "nonconsenting city" in section 8A to apply to or affect the right granted to a city governing body in section 14b to withdraw from a fire prevention district territory to which the city provides fire protection.

## S U M M A R Y

A home rule city may annex the territory of a rural fire prevention district that lies within the city's extraterritorial jurisdiction even though the city consented to the creation of a rural fire prevention district within its extra- territorial jurisdiction.  The fact that a city consents to the creation of a rural fire

prevention district composed in part of territory within the city's extraterritorial jurisdiction does not prevent the city from withdrawing an area in its corporate limits or extraterritorial jurisdiction from a fire prevention district as provided by article 2351a-6, section 14b, V.T.C.S.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General