TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00572-CV






Village of Salado, Appellant


v.


Lone Star Storage Trailer, II Ltd. and Lone Star Storage Trailer, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 213,084-C, HONORABLE J. F. CLAWSON JR., JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The Village of Salado (the "Village") annexed property along its eastern boundary,
including property owned by Lone Star Storage Trailer II, Ltc. and Lone Star Storage Trailer
(cumulatively, "Lone Star"). Lone Star filed a declaratory judgment action, asking the district court
to declare the annexation ordinance void. Both the Village and Lone Star filed motions for
summary judgment. The district court granted Lone Star's motion, denied the Village's motion,
and declared the ordinance void. The Village appeals the judgment of the district court. We will
reverse the judgment of the district court in part, render judgment in part, and remand for
further proceedings. 


BACKGROUND

 The dispute in this case arose from the annexation of land by the Village. The
annexation was a voluntary annexation initiated under section 43.025 of the local government code,
which authorizes individuals living in areas next to a "Type B general-law municipality" to request
annexation by the municipality. See Tex. Loc. Gov't Code Ann. § 43.025 (West 2008); see also
id. § 5.002 (West 2008) (defining Type B general-law municipality). In order to initiate an
annexation under section 43.025, "a majority of the qualified voters of an area contiguous to [the]
municipality [must] vote in favor of becoming a part of the municipality." Id. § 43.025(a). If a
majority vote in favor of annexation is obtained, three of the voters must "prepare an affidavit"
stating that the voting requirement had been met and must "file the affidavit with the mayor of the
municipality" in order for the annexation process to continue. Once the mayor receives the affidavit,
the mayor must "certify the filed affidavit to the governing body of the municipality." Id.
§ 43.025(b). After receiving the certified affidavit, the governing body "may annex the area" "by
ordinance." Id. If these requirements are satisfied, the area becomes part of the municipality on "the
effective date of the ordinance." Id. § 43.025(c). (1) On appeal, no party asserts that the procedural
requirements (majority vote, certification, issuance of ordinance) were not met. 

 The area annexed was east of the Village. Although the area annexed was owned by
several individuals, Lone Star owned approximately fourteen acres of the land annexed. At the time
of the annexation, Lone Star's property ran along the Village's eastern boundary, and Lone Star's
property was the only part of the property annexed that touched the Village's boundary. In other
words, although the annexation incorporated property that was even further east of the Village than
Lone Star's property, none of the other property directly abutted the Village's boundaries. 

 After the ordinance was issued, Lone Star filed a declaratory judgment action asking
the district court to declare the annexation ordinance void. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 37.001-.011 (West 2008) (Uniform Declaratory Judgment Act); see also id. § 37.004 (West 2008)
(allowing individuals "whose rights, status, or other legal relations are affected by a . . . municipal
ordinance . . . [to] have determined any question of construction or validity arising under the . . .
ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder"). The
Village and Lone Star filed competing motions for summary judgment. The district court granted
Lone Star's motion, denied the Village's motion, and declared the annexation ordinance void. (2) The
Village appeals the district court's judgment. 

 

STANDARD OF REVIEW

 For a traditional summary judgment motion to be granted, the movant must establish
that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.
Tex. R. Civ. P. 166a(c). The burden of proof is on the movant, and "we indulge every reasonable
inference and resolve any doubts in the nonmovant's favor." Southwestern Elec. Power Co.
v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). Appellate courts review a district court's decision to
grant a summary judgment de novo, Texas Mun. Power Agency v. Public Util. Comm'n, 253 S.W.3d
184, 192 (Tex. 2008), and we must affirm the summary judgment if any of the grounds are
meritorious, Texas Workers' Comp. Comm'n v. Patient Advocates of Tex., 136 S.W.3d 643, 648
(Tex. 2004). "When both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review the summary judgment evidence presented
by both sides and determine all questions presented and render the judgment the trial court should
have rendered." Id. 

 The issues raised in this appeal involve statutory construction, which is a question of
law that is reviewed de novo. See Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002);
USA Waste Servs. of Houston, Inc. v. Strayhorn, 150 S.W.3d 491, 494 (Tex. App.--Austin 2004,
pet. denied). In construing a statute, we must ascertain the legislature's intent in enacting the statute. 
Fleming Foods of Tex. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999). In making this determination,
courts should look to the plain meaning of the words used in the statute. See Fireman's Fund
County Mut. Ins. Co. v. Hidi, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was
deliberately chosen and that excluded words were left out on purpose. USA Waste Servs.,
150 S.W.3d at 494. In determining legislative intent, we may also consider the "consequences of
a particular construction." Tex. Gov't Code Ann. § 311.023 (West 2005); see City of Austin
v. Southwestern Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002). Courts should not construe a
statutory provision in a manner that leads to absurd results "if the provision is subject to another,
more reasonable construction or interpretation." C&H Nationwide, Inc. v. Thompson, 903 S.W.2d
315, 322 n.5 (Tex. 1994), disapproved on other grounds by Battaglia v. Alexander, 177 S.W.3d 893,
909 (Tex. 2005)). 


DISCUSSION

 In two issues, the Village contends that the district court erred by granting Lone Star's
summary judgment because the annexation complied with the requirements of section 43.025 and
was, therefore, proper. In response, Lone Star contends that the district court's judgment should be
upheld because the annexation did not comply with all of the requirements of section 43.025. 
Specifically, Lone Star asserts that the annexation was improper because Lone Star is the owner of
all of the property that is "contiguous to" the Village and because Lone Star did not consent to the
annexation. Stated differently, Lone Star contends that individuals who reside on property that is
not contiguous to or next to a municipality may not seek to comply with the "contiguous" annexation
requirement by including the property that is actually contiguous to the municipality within the area
to be annexed without the contiguous property owner's consent. See Black's Law Dictionary 222
(6th abridged ed. 1991) (defining "contiguous" as meaning "[i]n close proximity; neighboring;
adjoining; . . . in actual close contact; touching at a point or along a boundary"). Because Lone Star
did not consent to the annexation, it contends that the annexation was improper.

 We disagree with Lone Star's contentions for several reasons. First, section 43.025
does not distinguish between voters who own property along a municipality's borders and those who
do not; rather, all that is required is that a majority of the "qualified voters" in the area to be annexed
vote in favor of annexation. See Tex. Loc. Gov't Code Ann. § 43.025(a). In addition, the provision
does not specify an exception to the majority rule for circumstances in which one property owner
owns all of the property that runs along the boundary between the municipality and the area to be
annexed. Moreover, by allowing the provision to be satisfied by a majority vote rather than
unanimous consent, the legislature specifically allowed for annexation in situations in which not all
of the interested parties desire annexation. Nothing in section 43.025 persuades us that Lone Star's
objection should be treated differently than any other voter's. Furthermore, the provision seems to
contemplate that determinations regarding whether the "contiguous" requirement has been met are
to be made in light of the whole "area" to be annexed. See Tex. Loc. Gov't Code Ann. § 43.025; see
also Black's Law Dictionary 70 (6th abridged ed. 1991) (defining "area" as "a region"); Webster's
New Collegiate Dictionary 60 (1973) (defining "area" as "surface included within a set of lines"). 
There is no dispute that the annexed area as a whole was contiguous to the Village. See City of
Waco v. City of McGregor, 523 S.W.2d 649, 653 (Tex. 1975) (stating that area was contiguous to
city because area touched city in geographical sense). 

 Second, Lone Star's construction of the annexation provision would frustrate the
intent of the legislature and lead to arbitrary results. By enacting section 43.025, the legislature
intended for the voters in an area to decide if they should be annexed. Under circumstances similar
to the ones in this case, Lone Star's interpretation would deprive the majority of voters the right
afforded them by the legislature and would elevate the rights of owners of property abutting
municipalities over those individuals residing on property further away from the municipalities. In
addition, under Lone Star's interpretation, annexation would be improper even if every single
qualified voter of a large area desired annexation in the event that the owner of property along the
boundary between the municipality and the area to be annexed did not desire annexation. This
would be true regardless of the relative size of the property owned by the person against annexation
compared to the remainder of the area to be annexed. However, under this interpretation, annexation
would be allowed in nearly identical circumstances provided that one of the voters favoring
annexation owned property that also abutted the municipality's boundary. This same result would
occur in circumstances in which the point of contact with the municipality by the property owned
by the individual in favor of annexation is inconsequential compared to the point of contact by the
property owned by the individual against annexation. We cannot adopt a construction that would
lead to such disparate results. (3) 

 In its brief, Lone Star asserts that given the unique circumstances present in this case
and because the only reason its property was included in the area to be annexed was to make the
remainder of the area contiguous to the Village, we should determine whether the requirements of
section 43.025 were individually met for Lone Star's property and for the remainder of the property
annexed. If the two subareas are viewed separately, Lone Star insists that the requirements of 43.025
are not met because the remainder of the property was not contiguous to the Village. 

 As support for its assertion that this Court should examine the two subareas
individually, Lone Star cites to City of Waco v. City of McGregor. In that case, the City of Waco
sought to have one of the City of McGregor's annexation ordinances declared void. 523 S.W.2d at
650. The ordinance annexed the City of McGregor's airport and a strip of land that was 261 feet
wide and that stretched for five miles from the city to the airport. Id. At the time the case was
decided, the relevant statutory provision only authorized a city to annex property that was located
within the city's extraterritorial jurisdiction but excepted property that the city owns from the
limitation. Id. at 652; see Act of April 25, 1963, 58th Leg., R.S., ch. 160, §7(A), 1963 Tex. Gen.
Laws 447, 450; Tex. Loc. Gov't Code Ann. § 43.051 (West 2008) (containing current version); see
also id. § 42.021 (West 2008) (defining "extraterritorial jurisdiction" as "unincorporated area that
is contiguous to the corporate boundaries of the municipality"). When reading the statutory
provision in light of its prior precedent, the supreme court determined that the City of McGregor may
"annex all property which is within its extraterritorial jurisdiction or which it owns so long as the
annexed land is contiguous and adjacent to its corporate limits." City of Waco, 523 S.W.2d at 652. 
Ultimately, the supreme court determined that the City of McGregor could not properly annex the
strip because part of the strip to be annexed was not located within the City of McGregor's
extraterritorial jurisdiction and was not owned by the City of McGregor. Id. at 654. Because the
strip annexation was improper, the supreme court also concluded that the annexation of the airport
was improper because, without the strip, the airport was not contiguous to the boundaries of the City
of McGregor. Id. 

 Although the supreme court did analyze the strip separately from the airport in City
of Waco, that type of analysis is not warranted in this case. In City of Waco, the City of McGregor
owned the airport that it desired to annex. For that reason, the City of McGregor would have been
authorized to annex the airport provided that the remainder of the area to be annexed complied with
the other prerequisites, including contiguity, required under the relevant statutes and case law. 
Because the airport was only made contiguous to the City of McGregor through the annexation of
a narrow strip between the City and the airport, the supreme court focused its analysis on whether
the City of McGregor had the authority to annex the strip. 

 In this case, the Village was not attempting to annex a strip of land in order to reach
property that it already owned for the purpose of annexing the owned property, nor has any assertion
been made that any part of the annexed area was located outside the Village's extraterritorial
jurisdiction. (4) For these reasons, it is not necessary or appropriate to view the annexed area in a
piecemeal fashion. Rather, we must follow the statutory directive and determine whether the
entire area satisfies the statutory prerequisites. This seems particularly true in this case where
the annexation was initiated by voters in the area to be annexed. See Tex. Loc. Gov't Code
Ann. § 43.025. 

 For these reasons, we agree with the Village's assertion that the district court erred
by granting Lone Star's motion for summary judgment and by denying the Village's motion. 


CONCLUSION

 In light of the preceding, we reverse the district court's judgment granting Lone Star's
motion for summary judgment, denying the Village's motion for summary judgment, and declaring
the annexation void. Further, we render judgment that the annexation ordinance is valid and
enforceable. Finally, because the Village sought attorney's fees in its motion for summary judgment,
see Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) (allowing court to issue attorney's fees
in declaratory judgment action), we remand that issue to the district court so that it may determine
what amount of attorney's fees, if any, the Village is entitled to. 


 

 David Puryear, Justice

Before Chief Justice Law and Justices Puryear and Henson

 Chief Justice Law Not Participating


Reversed and Rendered in part; Reversed and Remanded in part

Filed: April 10, 2009


1. Subsection 43.025(d) states that a "municipality may not be enlarged under this section to
exceed the area requirements established by Section 5.901." Tex. Loc. Gov't Code Ann. § 43.025(d)
(West 2008); see also id. § 5.901 (West 2008) (listing size limits for general-law municipalities of
various populations). Lone Star does not assert that the annexation of the property in question would
violate the area requirements of section 5.901. 
2. In their motions, both parties asked for attorney's fees. As mentioned previously, in its
judgment, the district court denied the Village's motion in its entirety, but it also denied Lone Star's
request for attorney's fees. 
3. Although Lone Star limits its argument to situations in which one property owner owns all
of the property in an area to be annexed that abuts a municipality's boundary, this construction would
also forestall annexation through majority vote when more than one property owner owns the land
abutting a municipality and all of those owners do not consent to the annexation. Nothing in the
language of the statute bestows this additional veto power on owners of property located along the
borders of municipalities. Moreover, under Lone Star's interpretation, individuals with a potential
veto power would not be limited to those individuals that own property abutting the municipality;
instead, the contiguous nature of an area to be annexed could be broken at any point where a row of
property owners spanning the area to be annexed objects to the proposed annexation. As a practical
matter, interpreting the statute to permit this type of veto power would result in multiple, sequential
annexation procedures. The statute does not require annexation by accretion of one row of property
at a time; rather, all that it requires is that more voters in an area contiguous to a municipality favor
annexation than oppose it. 

 
4. Unlike the narrow strip and airport at issue in City of Waco, the annexed area in this case
ran along the Village's preexisting boundary line and was near the Village.