# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00572-CV

**Village of Salado, Appellant**

**v.**

**Lone Star Storage Trailer, II Ltd. and Lone Star Storage Trailer, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 213,084-C, HONORABLE J. F. CLAWSON JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Village of Salado (the "Village") annexed property along its eastern boundary, including property owned by Lone Star Storage Trailer II, Ltc. and Lone Star Storage Trailer (cumulatively, "Lone Star"). Lone Star filed a declaratory judgment action, asking the district court to declare the annexation ordinance void. Both the Village and Lone Star filed motions for summary judgment. The district court granted Lone Star's motion, denied the Village's motion, and declared the ordinance void. The Village appeals the judgment of the district court. We will reverse the judgment of the district court in part, render judgment in part, and remand for further proceedings.

## BACKGROUND

The dispute in this case arose from the annexation of land by the Village. The annexation was a voluntary annexation initiated under section 43.025 of the local government code,

which authorizes individuals living in areas next to a "Type B general-law municipality" to request annexation by the municipality. *See* Tex. Loc. Gov't Code Ann. § 43.025 (West 2008); *see also id.* § 5.002 (West 2008) (defining Type B general-law municipality). In order to initiate an annexation under section 43.025, "a majority of the qualified voters of an area contiguous to [the] municipality [must] vote in favor of becoming a part of the municipality." *Id.* § 43.025(a). If a majority vote in favor of annexation is obtained, three of the voters must "prepare an affidavit" stating that the voting requirement had been met and must "file the affidavit with the mayor of the municipality" in order for the annexation process to continue. Once the mayor receives the affidavit, the mayor must "certify the filed affidavit to the governing body of the municipality." *Id.* § 43.025(b). After receiving the certified affidavit, the governing body "may annex the area" "by ordinance." *Id.* If these requirements are satisfied, the area becomes part of the municipality on "the effective date of the ordinance." *Id.* § 43.025(c).[1] On appeal, no party asserts that the procedural requirements (majority vote, certification, issuance of ordinance) were not met.

The area annexed was east of the Village. Although the area annexed was owned by several individuals, Lone Star owned approximately fourteen acres of the land annexed. At the time of the annexation, Lone Star's property ran along the Village's eastern boundary, and Lone Star's property was the only part of the property annexed that touched the Village's boundary. In other

---

[1] Subsection 43.025(d) states that a "municipality may not be enlarged under this section to exceed the area requirements established by Section 5.901." Tex. Loc. Gov't Code Ann. § 43.025(d) (West 2008); *see also id.* § 5.901 (West 2008) (listing size limits for general-law municipalities of various populations). Lone Star does not assert that the annexation of the property in question would violate the area requirements of section 5.901.

words, although the annexation incorporated property that was even further east of the Village than Lone Star's property, none of the other property directly abutted the Village's boundaries.

After the ordinance was issued, Lone Star filed a declaratory judgment action asking the district court to declare the annexation ordinance void. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008) (Uniform Declaratory Judgment Act); *see also id.* § 37.004 (West 2008) (allowing individuals "whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . [to] have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder"). The Village and Lone Star filed competing motions for summary judgment. The district court granted Lone Star's motion, denied the Village's motion, and declared the annexation ordinance void.[2] The Village appeals the district court's judgment.

## STANDARD OF REVIEW

For a traditional summary judgment motion to be granted, the movant must establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The burden of proof is on the movant, and "we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Appellate courts review a district court's decision to grant a summary judgment de novo, *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2008), and we must affirm the summary judgment if any of the grounds are

---

[2] In their motions, both parties asked for attorney's fees. As mentioned previously, in its judgment, the district court denied the Village's motion in its entirety, but it also denied Lone Star's request for attorney's fees.

3

meritorious, *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004). "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered." *Id.*

The issues raised in this appeal involve statutory construction, which is a question of law that is reviewed de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). In construing a statute, we must ascertain the legislature's intent in enacting the statute. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In making this determination, courts should look to the plain meaning of the words used in the statute. *See Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words were left out on purpose. *USA Waste Servs.*, 150 S.W.3d at 494. In determining legislative intent, we may also consider the "consequences of a particular construction." Tex. Gov't Code Ann. § 311.023 (West 2005); *see City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002). Courts should not construe a statutory provision in a manner that leads to absurd results "if the provision is subject to another, more reasonable construction or interpretation." *C&H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n.5 (Tex. 1994), *disapproved on other grounds by Battaglia v. Alexander*, 177 S.W.3d 893, 909 (Tex. 2005)).

**DISCUSSION**

In two issues, the Village contends that the district court erred by granting Lone Star's summary judgment because the annexation complied with the requirements of section 43.025 and was, therefore, proper. In response, Lone Star contends that the district court's judgment should be upheld because the annexation did not comply with all of the requirements of section 43.025. Specifically, Lone Star asserts that the annexation was improper because Lone Star is the owner of all of the property that is "contiguous to" the Village and because Lone Star did not consent to the annexation. Stated differently, Lone Star contends that individuals who reside on property that is not contiguous to or next to a municipality may not seek to comply with the "contiguous" annexation requirement by including the property that is actually contiguous to the municipality within the area to be annexed without the contiguous property owner's consent. *See Black's Law Dictionary* 222 (6th abridged ed. 1991) (defining "contiguous" as meaning "[i]n close proximity; neighboring; adjoining; . . . in actual close contact; touching at a point or along a boundary"). Because Lone Star did not consent to the annexation, it contends that the annexation was improper.

We disagree with Lone Star's contentions for several reasons. First, section 43.025 does not distinguish between voters who own property along a municipality's borders and those who do not; rather, all that is required is that a majority of the "qualified voters" in the area to be annexed vote in favor of annexation. *See* Tex. Loc. Gov't Code Ann. § 43.025(a). In addition, the provision does not specify an exception to the majority rule for circumstances in which one property owner owns all of the property that runs along the boundary between the municipality and the area to be annexed. Moreover, by allowing the provision to be satisfied by a majority vote rather than

5

unanimous consent, the legislature specifically allowed for annexation in situations in which not all of the interested parties desire annexation. Nothing in section 43.025 persuades us that Lone Star's objection should be treated differently than any other voter's. Furthermore, the provision seems to contemplate that determinations regarding whether the "contiguous" requirement has been met are to be made in light of the whole "area" to be annexed. *See* Tex. Loc. Gov't Code Ann. § 43.025; *see also Black's Law Dictionary* 70 (6th abridged ed. 1991) (defining "area" as "a region"); *Webster's New Collegiate Dictionary* 60 (1973) (defining "area" as "surface included within a set of lines"). There is no dispute that the annexed area as a whole was contiguous to the Village. *See City of Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975) (stating that area was contiguous to city because area touched city in geographical sense).

Second, Lone Star's construction of the annexation provision would frustrate the intent of the legislature and lead to arbitrary results. By enacting section 43.025, the legislature intended for the voters in an area to decide if they should be annexed. Under circumstances similar to the ones in this case, Lone Star's interpretation would deprive the majority of voters the right afforded them by the legislature and would elevate the rights of owners of property abutting municipalities over those individuals residing on property further away from the municipalities. In addition, under Lone Star's interpretation, annexation would be improper even if every single qualified voter of a large area desired annexation in the event that the owner of property along the boundary between the municipality and the area to be annexed did not desire annexation. This would be true regardless of the relative size of the property owned by the person against annexation compared to the remainder of the area to be annexed. However, under this interpretation, annexation

would be allowed in nearly identical circumstances provided that one of the voters favoring annexation owned property that also abutted the municipality's boundary. This same result would occur in circumstances in which the point of contact with the municipality by the property owned by the individual in favor of annexation is inconsequential compared to the point of contact by the property owned by the individual against annexation. We cannot adopt a construction that would lead to such disparate results.[3]

In its brief, Lone Star asserts that given the unique circumstances present in this case and because the only reason its property was included in the area to be annexed was to make the remainder of the area contiguous to the Village, we should determine whether the requirements of section 43.025 were individually met for Lone Star's property and for the remainder of the property annexed. If the two subareas are viewed separately, Lone Star insists that the requirements of 43.025 are not met because the remainder of the property was not contiguous to the Village.

As support for its assertion that this Court should examine the two subareas individually, Lone Star cites to *City of Waco v. City of McGregor*. In that case, the City of Waco

---

[3] Although Lone Star limits its argument to situations in which one property owner owns all of the property in an area to be annexed that abuts a municipality's boundary, this construction would also forestall annexation through majority vote when more than one property owner owns the land abutting a municipality and all of those owners do not consent to the annexation. Nothing in the language of the statute bestows this additional veto power on owners of property located along the borders of municipalities. Moreover, under Lone Star's interpretation, individuals with a potential veto power would not be limited to those individuals that own property abutting the municipality; instead, the contiguous nature of an area to be annexed could be broken at any point where a row of property owners spanning the area to be annexed objects to the proposed annexation. As a practical matter, interpreting the statute to permit this type of veto power would result in multiple, sequential annexation procedures. The statute does not require annexation by accretion of one row of property at a time; rather, all that it requires is that more voters in an area contiguous to a municipality favor annexation than oppose it.

sought to have one of the City of McGregor's annexation ordinances declared void. 523 S.W.2d at 650. The ordinance annexed the City of McGregor's airport and a strip of land that was 261 feet wide and that stretched for five miles from the city to the airport. *Id.* At the time the case was decided, the relevant statutory provision only authorized a city to annex property that was located within the city's extraterritorial jurisdiction but excepted property that the city owns from the limitation. *Id.* at 652; *see* Act of April 25, 1963, 58th Leg., R.S., ch. 160, §7(A), 1963 Tex. Gen. Laws 447, 450; Tex. Loc. Gov't Code Ann. § 43.051 (West 2008) (containing current version); *see also id.* § 42.021 (West 2008) (defining "extraterritorial jurisdiction" as "unincorporated area that is contiguous to the corporate boundaries of the municipality"). When reading the statutory provision in light of its prior precedent, the supreme court determined that the City of McGregor may "annex all property which is within its extraterritorial jurisdiction or which it owns so long as the annexed land is contiguous and adjacent to its corporate limits." *City of Waco*, 523 S.W.2d at 652. Ultimately, the supreme court determined that the City of McGregor could not properly annex the strip because part of the strip to be annexed was not located within the City of McGregor's extraterritorial jurisdiction and was not owned by the City of McGregor. *Id.* at 654. Because the strip annexation was improper, the supreme court also concluded that the annexation of the airport was improper because, without the strip, the airport was not contiguous to the boundaries of the City of McGregor. *Id.*

Although the supreme court did analyze the strip separately from the airport in *City of Waco*, that type of analysis is not warranted in this case. In *City of Waco*, the City of McGregor owned the airport that it desired to annex. For that reason, the City of McGregor would have been

8

authorized to annex the airport provided that the remainder of the area to be annexed complied with the other prerequisites, including contiguity, required under the relevant statutes and case law. Because the airport was only made contiguous to the City of McGregor through the annexation of a narrow strip between the City and the airport, the supreme court focused its analysis on whether the City of McGregor had the authority to annex the strip.

In this case, the Village was not attempting to annex a strip of land in order to reach property that it already owned for the purpose of annexing the owned property, nor has any assertion been made that any part of the annexed area was located outside the Village's extraterritorial jurisdiction.[4] For these reasons, it is not necessary or appropriate to view the annexed area in a piecemeal fashion. Rather, we must follow the statutory directive and determine whether the entire area satisfies the statutory prerequisites. This seems particularly true in this case where the annexation was initiated by voters in the area to be annexed. *See* Tex. Loc. Gov't Code Ann. § 43.025.

For these reasons, we agree with the Village's assertion that the district court erred by granting Lone Star's motion for summary judgment and by denying the Village's motion.

## CONCLUSION

In light of the preceding, we reverse the district court's judgment granting Lone Star's motion for summary judgment, denying the Village's motion for summary judgment, and declaring the annexation void. Further, we render judgment that the annexation ordinance is valid and

---

[4] Unlike the narrow strip and airport at issue in *City of Waco*, the annexed area in this case ran along the Village's preexisting boundary line and was near the Village.

9

enforceable.  Finally, because the Village sought attorney's fees in its motion for summary judgment, *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) (allowing court to issue attorney's fees in declaratory judgment action), we remand that issue to the district court so that it may determine what amount of attorney's fees, if any, the Village is entitled to.

_____

David Puryear, Justice

Before Chief Justice Law and Justices Puryear and Henson
  Chief Justice Law Not Participating

Reversed and Rendered in part; Reversed and Remanded in part

Filed:   April 10, 2009