At the outset, I invite the reader to compare this case with the decisions of this Court in the following cases: City ofFultondale v. City of Birmingham, 507 So.2d 489 (Ala. 1987);City of Tuskegee v. Lacey, 486 So.2d 393 (Ala. 1985); and Cityof Dothan v. Dale County Comm'n, 295 Ala. 131, 324 So.2d 772
(1975). In City of Fultondale, a majority of this Court overruled City of Tuskegee, but declined to overrule City ofDothan, recognizing factors that distinguish City of Tuskegee
from City of Dothan:
 "First the facts in City of Dothan and City of Tuskegee are materially different. In City of Dothan, a private property owner petitioned to have his property annexed into the city of Dothan. This property created the necessary contiguity with the airport property. City of Tuskegee involved 14 miles of public road rights-of-way, and not one property owner along that route petitioned to be brought into the city of Tuskegee. Alabama's statutory methods of annexation require that property owners consent to the annexation before an annexation of their property can occur. See Ala. Code 1975, §§ 11-42-1 through 11-42-88. The public road rights-of-way annexed in City of Tuskegee were used merely to create contiguity and, in effect, to avoid the requirement of a touching at some point. We do not believe the legislature intended to allow annexation in this manner."
(Emphasis added. Footnote omitted.) 507 So.2d at 490-91. While it is true that City of Tuskegee and City of Fultondale
involved attempts to annex public rights-of-way for use as corridors to create the necessary contiguity, and that City ofDothan did not and neither does the present case, it is still true, as recognized in City of Tuskegee, that "[t]here is no statutory requirement that the land be private rather than public, and we find no basis for reading this limitation into the statute." City of Tuskegee, 486 So.2d at 396. Nevertheless, in City of Fultondale, this Court recognized that the reasonableness of annexing a given corridor in order to create contiguity turns not only upon a consideration of whether the corridor consists solely of public as opposed to private property, but also upon a consideration of whether the appropriate "consent" was obtained. Thus, applying this court's analysis in City of Fultondale, one must conclude that the rule of reasonableness, as applied to the corridor method of annexation, requires that, where a corridor of land is sought to be annexed for the sole purpose of creating contiguity
between the city and another parcel of land, there must be either (1) "qualified electors residing within the territory" of the corridor who may vote in the annexation election (§11-42-43) or who may consent to the annexation in accord with §11-42-2(9) and (10); or (2) "owners" of the property within the corridor who have petitioned to come within the city under §§11-42-20 through -23.
As stated in City of Fultondale, under each method of annexation provided for in Alabama's annexation statutes,[1] the "consent" *Page 597 
of the qualified residents and/or property owners is required, whether that consent be given in the form of a vote of the majority of qualified electors (§ 11-42-43); a petition by all property owners (§ 11-42-21 through -23); or by the consent in writing of all qualified electors in lieu of an election (§11-42-2(9) and (10)). In the present case, the trial court found that there are no residents in the 200-foot-wide, approximately 10-mile-long corridor that connects the Port Birmingham property to the first corridor that creates the contiguity with Birmingham. There being no residents in this corridor, there are no "qualified electors residing within" the corridor who voted in the annexation election at issue in this case. Nor have the owners of the property within this corridor petitioned under §§ 11-42-20 through -23 to come into Birmingham, as did the property owner in City of Dothan.
Furthermore, Birmingham concedes that the "consent" agreement it obtained from Alabama By-Products Corporation and Drummond Company, Inc., who own or lease 90 percent of the land within the corridor in question, is both illegal and unenforceable, although Birmingham contends that the illegality and unenforceability of this agreement do not serve to invalidate the annexation election. I disagree with that contention.
It is undisputed that Birmingham sought to annex the 200-foot-wide corridor for the sole purpose of creating contiguity between Birmingham and the Port Birmingham area.[2] Furthermore, the map filed by Birmingham with the probate court included the corridor land as a part of the proposed annexation territory subject to the annexation election called for by Birmingham. See § 11-42-43. Unquestionably, the validity of that election is contingent upon the proper inclusion of this corridor containing no residents. Because the consent of the owners of the property within the corridor, which otherwise contained no "qualified electors residing within" it, was notobtained by any of the methods provided for in the annexationstatutes, under City of Fultondale, the annexation election cannot be upheld.
It is crucial to bear in mind that, except for the fact that in City of Fultondale and in City of Tuskegee the corridors used to create contiguity consisted of public right-of-way property, this case is identical to those. The rationale used by this Court in City of Fultondale to disallow altogether the use of public right-of-way corridors and to successfully distinguish City of Dothan from City of Tuskegee (which was overruled) is that the consent of the landowners and/orqualified electors could never be obtained where a public rightof way is used as a corridor. The same is true here, where, byelection, the city of Birmingham purports to annex anuninhabited corridor to create contiguity, because there are no qualified electors within such a corridor to give their consent, just as there are none within a public right-of-way. Thus, the same rationale that makes unreasonable the use of public rights-of-way as corridors also makes unreasonable the use of corridors such as that drawn in this case.
Contrary to the majority's assertion, this case is not likeCity of Dothan and thus should not be controlled by that case. As noted in City of Fultondale, the owner of the land petitioned to have his property brought into the city of Dothan, and therefore, the requisite "consent" was obtained in that case. That consent was not obtained in the present case.
In his dissent in City of Tuskegee, Justice Jones (joined by Torbert, C.J., and Maddox and Almon, JJ.) cited the cases collected at Annot., 49 A.L.R.3d 589, §§ 10 and 16 (1973), as supportive of the trial court's rejection of the "long lasso" doctrine. *Page 598 
Justice Jones went on to distinguish City of Dothan from Cityof Tuskegee by pointing only to the fact that City of Tuskegee
involved an "extended corridor consisting solely of public rights of way connecting the 'annexed' property to the city boundary," apparently concluding that that fact, standing alone, should have provided the basis for striking down the annexation. As I have already noted, however, as did the majority in City of Tuskegee, our statutes do not require that the territory a city proposes to annex consist solely of private as opposed to public land, and there is "no basis for reading this limitation into the statute." City of Tuskegee, 486 So.2d at 396.
Furthermore, in none of the cases collected at 49 A.L.R.2d 589, supra, in which the annexations using public highway corridors for the sole purpose of creating contiguity were held to be invalid, do the various courts seize upon the fact that the corridor consisted of a strip of public right-of-way land (as opposed to private land) as a basis for disallowing the purported annexation. Rather, the use of such corridors was disallowed in these cases primarily because their use was deemed not to have satisfied the contiguity and adjacency requirements. See Potvin v. Village of Chubbuck, 76 Idaho 453,284 P.2d 414 (1955); People ex rel. Coojar Realty Corp. v.Village of Burr Ridge, 81 Ill. App.2d 203, 225 N.E.2d 39
(1967); Ridings v. City of Owensboro, 383 S.W.2d 510 (Ky. 1964). (See also Genesee Township v. Genesee County, 369 Mich. 592, 120 N.W.2d 759 (1963), involving a corridor consisting of a 150-foot-wide railroad right-of-way; and City of Irving v.Dallas County Flood Control Dist., 383 S.W.2d 571 (Tex. 1964), involving a corridor consisting of a sliver of land one-half mile wide and six miles long running down a river.) In each of these cases, the court also attached significance to the fact that, other than creating the necessary contiguity between the city and the desired parcel or tract of land, no legitimate municipal purpose of value in annexing the property within the corridors was shown. The same is clearly true in the present case.
Because a majority of this Court has declined to reconsider the position represented by City of Dothan, none of the above rationales used by other courts to disallow corridors that happened to consist of public rights-of-way can be used by this Court to disallow only those corridors that consist solely of public rights-of-way. In City of Dothan, we held that the touching at some point by a narrow corridor is sufficient to meet the contiguity requirement, and that, so long as there is a legitimate municipal purpose in annexing the property within the "balloon at the end of the string," the use of the corridor method is not, in and of itself, objectionable. Thus, because the majority rejects the notion expressed in City ofFultondale, that consent of the landowners/qualified voters
within a corridor drawn for the sole purpose of creating contiguity is required in order to make the use of such a corridor reasonable, this question arises. Just what is this Court's rationale for disallowing public right-of-way corridors such as those used in City of Fultondale and in City ofTuskegee? Put another way: What is it about public right-of-way corridors that makes them any more objectionable than the shoestring corridor drawn in this case? I submit that the public right-of-way corridor versus a private, uninhabited strip corridor distinction merely begs the question.
Essentially, what Birmingham has done in this case, by virtue of an unlawful and invalid consent agreement, is to draw an "annexation right-of-way corridor" through uninhabited private land, connecting a corridor contiguous to Birmingham to the Port Birmingham area. Except that it is over private uninhabited land, this corridor is essentially equivalent in configuration to a public right-of-way corridor. By using either type of corridor, there can never be a voice as to the land within the corridor in an annexation election including that corridor. Therein lies the abuse of discretion and the only rationale for allowing City of Dothan -type annexations and disallowing City of Tuskegee and uninhabited corridor annexations, such as the one in the present case. In view of this Court's refusal to recognize this as its rationale, I fail to see any rationale whatsoever for disallowing public right-of-way corridors used for the *Page 599 
sole purpose of creating contiguity. Indeed, it is thislack of consent in these scenarios that allowed this Court, in construing the annexation statutes, to say that "[w]e do not believe the legislature intended to allow annexation in this manner," and thereby hold "that the use of public road rights-of-way to create contiguity is unreasonable and invalid as a matter of law." City of Fultondale, 507 So.2d at 491. Within our statutory scheme and this Court's interpretation thereof, no other rationale exists, and if public right-of-way corridors must go, so must the uninhabited shoestring corridor in the present case. For these reasons, I would affirm the judgment below.
TORBERT, C.J., and HOUSTON, J., concur.
[1] The three annexation articles are described with particularity in City of Birmingham v. Smith, 507 So.2d 1312 (Ala. 1987).
[2] This purpose is evident on the face of the consent agreement between Birmingham and Alabama By-Products Corporation and Drummond Company, Inc.:
 "1. Any unoccupied portion of the 200' corridor extending from the Warrior River to Section 12, Township 18 South, Range 5 West, shall be moved at any time in the judgment of the mining companies it affects mining operations of the mining corporations, provided a petition for a substitute corridor through unoccupied territory is presented to the City for an alternative corridor to maintain contiguity of the annexed territory." (Emphasis added.)