**CITY OF IRVING, Texas, Petitioner,**

v.

**DALLAS COUNTY FLOOD CONTROL DISTRICT et al., Respondents.**

No. A–10131.

Supreme Court of Texas.

Oct. 21, 1964.

Rehearing Denied Nov. 25, 1964.

C. J. Taylor, Jr., City Atty., Irving, for petitioner.

H. P. Kucera, City Atty., Henry Wade, Dist. Atty., Scurry, Scurry & Hodges, Dallas, for respondents.

CALVERT, Chief Justice.

Suit was by Dallas County Flood Control District, City and County of Dallas Levee. Improvement District, and Dallas County Levee Improvement District No. 5 against the City of Irving to enjoin the City from adopting Ordinance No. 833 or any ordinance annexing territory lying within the two Levee Improvement Districts, and to declare void any such ordinances theretofore adopted. The City of Dallas and the State of Texas intervened on the side of the plaintiffs, the State of Texas by petition in the nature of quo warranto filed by the District Attorney.

This appeal is from a judgment of the trial court granting a temporary injunction.

By its terms the City of Irving is restrained and enjoined from taking any action to adopt Ordinances Nos. 833 and 834, or any other ordinance seeking to annex any portion of the Levee Improvement Districts, and from exercising any rights or powers over any territory within the districts. The Court of Civil Appeals affirmed. 377 S.W.2d 215. We reverse the judgment of the Court of Civil Appeals and modify and affirm the judgment of the trial court.

■ The trial court's judgment is expressly rested on a conclusion that only cities qualifying under Art. 974e–8 [1] have power and authority to annex territory included within the boundaries of levee improvement districts, and that Irving does not so qualify. The Court of Civil Appeals affirmed for the same reason. We cannot accept the conclusion as a sound basis for the judgment. It is true that the statute is inapplicable to Irving, a city having a population of less than 425,000 according to the last preceding Federal Census, but we do not interpret it as constituting the source of a Home Rule city's power and authority to annex territory within the boundaries of levee improvement districts, or as a limitation on the power. Rather, we interpret Art. 974e–8 as regulating the legal relationship between cities having a population of more than 425,000 inhabitants and levee improvement districts when all or a part of the territory within such districts is annexed by cities of that size.

Art. 974e–8 was enacted in 1951. See Acts 52nd Leg., Reg. Ses., ch. 326, p. 561. As enacted, it applied, and still applies, to any city, including Home Rule cities, having a population in excess of four hundred twenty-five thousand (425,000) according to the last preceding Federal Census, which had theretofore annexed or might thereafter annex territory within a levee improvement district. The Article deals first with situations in which a city annexes all of the territory of a levee improvement

1. All Article references are to Vernon's Texas Civil Statutes.

district. In those situations, it provides, that the district shall be abolished; that the city shall take over all of the properties and assets of the district, assume all of its debts and liabilities, and perform all of its functions; that the city shall assume all of the rights and obligations under existing contracts with flood control districts or other governmental agencies for operation of levees or other flood control works; and, finally, that the city shall have authority to refund outstanding bonded indebtedness of the district and provide a sinking fund therefor. The Article then deals with situations in which a city annexes only a part of the territory of a district. In those situations it provides that "the governing authorities of such city and district shall be authorized to enter into contracts in regard to the division and allocation of duplicate and overlapping powers, functions and duties between such agencies, and in regard to the use, management, control, purchase, conveyance, assumption and disposition of the properties, assets, debts, liabilities and obligations of such district;" that the district may sell any utility system or other property owned by it to the city, or contract for its operation by the city; that in the absence of contract, the district shall have authority to continue to exercise the powers and functions and to discharge the duties and obligations imposed on it by law, unaffected by the annexation, in which event the city shall not be required to perform any drainage function in the district but may continue to perform all other authorized municipal functions which the district is not authorized to perform.

The whole tenor of the article indicates quite plainly that it was not intended as a source of power or authority to annex levee district territory, limited to a particular class of cities and excluding all others, but that it was intended to declare the legal status of the respective governmental units in overlapping territory when the overlap results from annexation of levee district territory by a city of more than 425,000 inhabitants, and to regulate their respective rights, duties, powers and obligations.

Respondents emphasize certain language in the emergency clause of the Act, which, to them, indicates legislative recognition that before its passage cities had no authority to annex territory of levee improvement districts. The language reads: "The fact that there is not any law *applicable to the annexation*[2] by cities of territory situated within levee improvement district[s] * * * creates an emergency * * *." Respondents interpret this language as though it read: "The fact that there is not any law *authorizing the annexation* by cities of territory situated within levee improvement districts * * creates an emergency * * *." This is hardly a reasonable interpretation of the language when considered alone, and it is not at all reasonable when the language is considered in context with all parts of the Act.

If the Legislature had believed that there was at the time no law authorizing such annexations, and had intended that the Act confer the authority, surely express provision therefor would have been written into the body of the Act; but there are no words in the body of the Act expressly conferring annexation powers. Moreover, the emphasized language of the opening sentence of the Act makes its provisions applicable to cities which *had annexed* levee district territory *prior* to its enactment, and thus is tacit recognition by the Legislature that power to annex existed theretofore. That our interpretation of the Article is correct is also borne out by the caption of the Act, which reads:

> "An Act *prescribing the powers, duties and obligations of cities* including Home Rule cities and those operating under General Laws or special charters having a population in excess of four hundred

---

2. Emphasis ours throughout unless otherwise indicated.

twenty-five thousand (425,000) inhabitants *with reference to properties of levee improvement districts which have heretofore been annexed or which may hereafter be annexed* by such cities; providing a savings clause; and declaring an emergency."

When all parts of the Act are considered, it would require a strained interpretation of the language of the emergency clause to say that the Legislature intended thereby to make a finding that there then existed no lawful authority for Home Rule cities to annex territory situated within levee improvement districts. Moreover, any such finding would have been an erroneous finding.

 The City of Irving is a Home Rule city. Home Rule cities derive their powers from Art. 11, § 5 of the Constitution, Vernon's Ann.St., which restrains their exercise of legislative powers only to the extent that "no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." The power to annex territory is a legislative power. Norris v. City of Waco, 57 Tex. 635, 641. There is no constitutional provision with which an ordinance annexing levee improvement district territory is inconsistent; and there is no general law with which it is inconsistent unless it be Art. 974e–8, and it is not inconsistent with that law as we have interpreted it. Moreover, subdivision 2 of Art. 1175 expressly confers power on a Home Rule city "to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city * * *." [3] The provision expressly empowers Home Rule cities to annex any territory which is adjacent to them, State ex rel. Pan American Production Co. v. Texas City, 157 Tex.

450, 303 S.W.2d 780; State ex rel. Graves v. City of Sulphur Springs, Tex.Civ.App., 214 S.W.2d 663, writ refused, no reversible error, and which is not included within the limits of another incorporated city. City of Houston v. State, 142 Tex. 190, 176 S.W.2d 928; City of Houston v. City of Magnolia Park, 115 Tex. 101, 276 S.W. 685; City of Galena Park v. City of Houston, Tex.Civ. App., 133 S.W.2d 162, writ refused. We find nothing in the general law which removes levee district territory from the scope of the power. The power to annex territory lying within kindred governmental units has been recognized and upheld, expressly or by implication, see City of Pelly v. Harris County Water C. & I. Dist., 145 Tex. 443, 198 S.W.2d 450 (Water Control & Improvement District and two Fresh Water Supply Districts); Jefferson County Water C. & I. Dist. No. 5 v. City of Port Arthur, 160 Tex. 136, 327 S.W.2d 415 (Water Control Improvement District); Harris County Drainage Dist. No. 12 v. City of Houston, Tex.Com.App., 35 S.W.2d 118 (Drainage District); and we know of no good reason for holding that levee district territory lies in an immunized sanctuary.

 But the fact that the courts below gave an erroneous reason for issuing and sustaining the temporary injunction does not require its dissolution if the pleadings and the evidence provide a sound basis in law for its issuance. A trial court is not required in granting a temporary injunction to assign reasons for finding that the applicant will probably prevail in a trial on the merits. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549; Oil Field Haulers Ass'n v. Railroad Commission, Tex.Sup., 381 S.W.2d 183. We have concluded that the judgments of the trial court and Court of Civil Appeals temporarily enjoining Irving from finally adopting Ordinances Nos. 833 and 834 must be affirmed for reasons and on grounds differing from that given by such courts.

---

3. This power is now circumscribed by limitations. See Acts 58th Leg., Reg. Ses.,

p. 447, ch. 160. The ordinances under consideration antedated this Act.

Subdivision 2 of Art. 1175 which expressly confers power on Home Rule cities to annex territory, contains its own limitation of the scope of the power—the territory to be annexed must lie "adjacent" to the annexing city. In State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780, we held that "the usual meaning of the word 'adjacent' must be applied to the words of the statute and that the Legislature used the term in the sense of being 'contiguous' and 'in the neighborhood of or in the vicinity of,' without reference to the character of the land or the use to which it is put." We pointed out in the same case, however, that whether land was "adjacent" to an annexing city was a law question; and we clearly indicated by referring to the extreme situations imagined by the dissenting Justice in State ex rel. Graves v. City of Sulphur Springs, Tex.Civ.App., 214 S.W.2d 663, 666, writ refused, no reversible error, that we would not uphold ordinances of Home Rule cities annexing territory which as a matter of law was not adjacent. See 303 S.W.2d 786.

In State ex rel. Pan American Production Co. v. Texas City we also cited State v. Camper, Tex.Civ.App., 261 S.W.2d 465, writ refused, with approval. In that case the Court stated that the meaning of the word "adjacent" is "'determinable principally by the context in which it is used, and the facts of each particular case, or by the subject-matter to which it is applied.'" 261 S.W.2d 468. The context in which the word is used in subdivision 2 of Art. 1175 thus becomes important to its meaning.

 Subdivision 2 of Art. 1175 confers power on *all* Home Rule cities to annex adjacent territory. The meaning of the word "adjacent" must, therefore, be related to the fact that one city has as much authority to annex as another. Certain unincorporated territory may be equally adjacent, or substantially so, to two or more Home Rule cities, in which event

either or any one of them would have authority to annex all of it. See City of Houston v. State, 142 Tex. 190, 176 S.W. 2d 928. On the other hand, territory may be adjacent to only one Home Rule city, in which event it is not made adjacent to another city by the mere fact that it can be reached and encircled by boundary lines which at some point are contiguous with the boundary lines of such city. "Adjacency," as between two Home Rule cities, must be tested by the facts in each case. By way of example, a 100-acre tract of land lying on the northern boundary line of the City of San Antonio is adjacent to that city but is not adjacent to Austin, some 75 miles distant, although, conceivably, the 100-acre tract could be encompassed in lines drawn around a thin sliver or finger of unincorporated territory adjoining the southern boundary of Austin and running the full length of the 75 miles to the northern boundary of San Antonio.

The pleadings of the defendants and intervenors raise the question of the adjacency to the City of Irving of the territory involved in this suit. On the record before us we hold, as a matter of law, that most of the territory encompassed within the boundary lines drawn by Ordinance No. 833 is adjacent to the City of Dallas but is not adjacent to the City of Irving.

Unlike the Austin-San Antonio example given above, Irving and Dallas are not 75 miles distant from each other. The maps in evidence disclose that the east boundary line of Irving lies only a short distance from the west boundary line of Dallas. Now, it may well be that most unincorporated territory lying between two closely neighboring cities is, in a sense, adjacent to both, as was true in City of Houston v. State, 142 Tex. 190, 176 S.W. 2d 928; but undoubtedly there can be a factual situation in which some of the territory is, in law, adjacent to only one. Such is the situation here with respect to most of the territory described in Ordinance No. 833.

The territory described in Ordinance No. 833 is, for the most part, a long sliver of land, approximately one-half mile wide and approximately six miles long. It has its base on the present southeastern boundary of Irving and points like a finger into the very heart of industrial development along the boundary lines of Dallas. It runs down the Trinity River channel, and reaches its terminus at the Commerce street viaduct which spans the Trinity and joins the eastern and western parts of Dallas. Its boundaries on the east and west are coincident with City of Dallas boundaries for its entire length; and it includes levees paralleling the Trinity River, built to contain and control the river's flood waters to prevent damage to property in Dallas. A rough diagram of the area (shaded), also showing present boundaries of Dallas and Irving, is appended.

[—·—··—] Irving boundary

[⌐⌐⌐⌐] Dallas boundary

\* Status not shown in record.

What has been said by way of description and the foregoing diagram make evident the basis of our holding that most of the territory sought to be annexed by Irving Ordinance No. 833 is adjacent to Dallas but is not adjacent to Irving. The problem of adjacency to two Home Rule cities was not involved in State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780, State ex rel. Graves v. City of Sulphur Springs, Tex. Civ.App., 214 S.W.2d 633, writ refused, no reversible error, or City of Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434; hence, those cases are not controlling here.

It is not within the power of the courts to reframe Ordinance No. 833 to eliminate therefrom territory which is not adjacent to the City of Irving. City of San Antonio v. Berry, 92 Tex. 319, 48 S.W. 496; State ex rel. American Mfg. Co. of Texas v. City of Ft. Worth, Tex.Civ.App., 314 S.W.2d 335, no writ history. It follows that the trial court did not abuse its discretion in enjoining final adoption of the ordinance.

Ordinance No. 834 presents a different problem. Applying the description of the territory contained in the ordinance to the maps in evidence, it appears that such territory may be adjacent to both Dallas and Irving. Whether it is adjacent to only one or to both of the cities is a matter to be decided initially by the trial court, and its adjacency may be decided in the trial on the prayer for permanent injunction. The temporary injunction prohibiting adoption of Ordinance No. 834 pending a hearing on the prayer for a permanent injunction preserves the status quo, and the trial court did not abuse its discretion in granting it. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549.

As noted in the beginning of this opinion, the temporary injunction granted by the trial court also prohibited the City of Irving from exercising any rights or powers over *any* territory lying within the Levee Improvement Districts. In so far as the injunction applies to territory annexed by Irving prior to the institution of this suit, it destroys rather than preserves the status quo and cannot be permitted to stand. The validity of prior ordinances is attacked in the suit, but their validity was not adjudicated by the temporary injunction judgment and is not involved in this appeal.

The judgment of the Court of Civil Appeals affirming the judgment of the trial court is reversed, and the judgment of the trial court is modified to eliminate therefrom any provision which prohibits the City of Irving from exercising rights, powers and controls over territory lying in the plaintiff Levee Districts finally annexed prior to the institution of this suit. As modified, the judgment of the trial court is affirmed.

All costs are assessed against the City of Irving.