**TOWN OF FAIRVIEW,**
Texas, Appellant

v.

**CITY OF McKINNEY, Texas, Appellee.**

**No. 05–06–01691–CV.**

Court of Appeals of Texas,
Dallas.

Dec. 4, 2008.

Daniel R. Barrett, E. Allen Taylor, Douglas W. Black, Fredrick Quast, Tim G. Sralla, Taylor, Olson, Adkins, Sralla & Elam, L.L.P., Fort Worth, for Appellant.

Mark E. Goldstucker, Mark S. Houser, Brown & Hofmeister, LLP, Richardson, for Appellee.

Before Justices MORRIS, WRIGHT, and MOSELEY.

## OPINION

Opinion by Justice MOSELEY.

The City of McKinney sued the Town of Fairview in 2000 seeking a declaratory judgment and injunction regarding the validity of several Fairview annexation ordinances. Fairview counterclaimed for declaratory relief challenging several of McKinney's annexation ordinances. The ordinances at issue date back as far as 1958.

The parties settled a portion of their dispute through an agreed judgment (which the trial court severed and made final), leaving three tracts of land in dispute. Thereafter, and after a non-jury trial, the trial court signed a judgment in favor of McKinney. Fairview appeals.

The outcome of this appeal hinges on the effects of three municipal ordinances: McKinney's annexation ordinance 472, passed in 1958; McKinney's ordinance 478, passed in 1959, that attempted to "disannex" a 600–foot–wide strip of land located within the territory described in ordinance 472 but also located within Fairview's city limits; and Fairview's annexation ordinance 70–05–4847, passed in 1970. The disputed tracts are located some distance away from the boundaries described in all these ordinances. However, the effects of these ordinances impact the existence and extent of each city's extraterritorial jurisdiction (ETJ) and, as a result, their respective jurisdictional claims over the three tracts.

The trial court's judgment states "ordinance 472 establishes the boundary on which McKinney's [ETJ] is based and is valid." The judgment also states the three tracts "are within the jurisdictional authority of [McKinney] and all annexation ordinances attempting to annex said tracts that are inconsistent with this Final Judgment are void."

Fairview's first issue asserts, for two reasons, that ordinance 472 is void as a matter of law and, as a result, the disputed tracts are not within McKinney's city limits or ETJ. First, Fairview contends the "vault copy" version of ordinance 472 contains a boundary description that does not close, and that under McKinney's city charter this vault copy version controls as a matter of law over a "boundary-file" version of the ordinance, which contains a boundary description that closes. Second, Fairview asserts ordinance 472 is void as a matter of law because its boundary line included the 600–foot–wide strip, and thus ·encroached on Fairview's city limits. In connection with this argument, Fairview asserts that ordinance 478—the disannexation ordinance—does not cure the defect in the annexation ordinance.

Fairview's second issue asserts that even if ordinance 472 is valid, it did not extend McKinney's ETJ to cover all of the

disputed tracts. Fairview asserts at least a portion of the tracts is within Fairview's city limits or ETJ by virtue of its ordinance 70–05–4847, which, although void when adopted, was later validated by the 1979 validation act back to the date the ordinance was enacted. *See* Act of May 25, 1979, 66th Leg., R.S., ch. 473, 1979 Tex. Gen. Laws 1043.

For the reasons set forth herein, we conclude the trial court was not prohibited from relying on the boundary-file version of ordinance 472—which contains a valid description of the property McKinney sought to annex. We also conclude ordinance 472 is void in part, namely, to the extent it attempted to annex the 600–foot strip. However, we conclude ordinance 472 was effective to annex the rest of the territory described therein and that, under the circumstances presented here, upholding ordinance 472 in part does not constitute a judicial exercise of the legislative function.

We also conclude that Fairview's ordinance 70–05–4847, which attempted to annex a noncontiguous tract south of the disputed tracts, was void up to the effective date of the 1979 validation statute. By that time, however, McKinney had already acquired ETJ over the disputed tracts, and thus the ordinance did not extend Fairview's ETJ to include a portion of the tracts. Thus, we conclude the trial court did not err by determining McKinney has authority over the entirety of the three tracts.

We modify the trial court's judgment to reflect the partial validity of ordinance 472. As modified, we affirm the trial court's judgment.

## BACKGROUND

McKinney is a home-rule city; its charter was adopted in 1913. In May 1958, Fairview incorporated as a general law municipality located some distance to the south of McKinney. Fairview's northern boundary line included a strip of land, 600 feet wide, that extended north about 1,300 feet along what is now State Highway 5.

On November 24, 1958, McKinney adopted ordinance 472, amending its city charter to set new boundary limits as described in the ordinance. Ordinance 472 sought to expand McKinney's boundary in all directions, including to the south towards Fairview. However, the territory described in ordinance 472 included the 600–foot–wide strip along Highway 5 that was already a part of Fairview. Some two months later, on January 19, 1959, McKinney adopted ordinance 478, which described the 600–foot–wide strip by metes and bounds and declared that it was "disannexed" from McKinney. As Fairview points out, however, ordinance 478 did not otherwise restate McKinney's boundaries.

On August 23, 1963, the Municipal Annexation Act[1] became effective. The Act created the concept of extraterritorial jurisdiction and restricted a municipality's ability to annex property to property in its ETJ or property it owned. *See* TEX. LOC. GOV'T CODE ANN. § 43.051.[2] A municipality's

---

1. TEX. LOC. GOV'T CODE ANN. §§ 42.001–43.907 (Vernon 2008).

2. Prior to 1912, the legislature created virtually all municipalities and established or altered their boundaries. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 26–27 (Tex.2003). With the adoption of the Home Rule Amendment in 1912, the constitution

abrogated the legislature's power to grant and change the charters of home-rule cities. *Id.* Home-rule cities acquired the authority to annex territory without consent of the owners and without establishing a need for the area or even incurring the obligation to provide services to the new area. *Id.* This virtually unbridled annexation authority led to "annexation wars" and other abuses. *Id.* In 1963,

ETJ is the unincorporated area contiguous to, and located within a certain distance of, those boundaries. *See* Tex. Loc. Gov't Code Ann. § 42.021(1), (2). That distance, and thus the size of a municipality's ETJ, is based on the municipality's population. *Id.* At the times relevant to this case, McKinney's ETJ was one mile and Fairview's ETJ was one-half mile around their respective city limits. Based on the territory described in ordinance 472 (minus the 600–foot–wide strip that was already a part of Fairview), McKinney's ETJ in 1963 would include portions of the disputed tracts. Fairview's ETJ at that time did not include any part of the disputed tracts.[3]

On February 3, 1970, Fairview adopted ordinance 70–05–4847, which sought to annex 221 acres located south of and adjacent to the three disputed tracts. It is undisputed that, at that time, the 221–acre tract was located outside of Fairview's ETJ and was not contiguous to its city limits. Thus, Fairview admits this ordinance was void when adopted. However, as mentioned previously, Fairview contends the legislature's 1979 validation act validated ordinance 70–05–4847 from its inception in February 1970. If Fairview's contention is correct, this ordinance had the effect of extending Fairview's ETJ to cover a portion of the disputed tracts.

Beginning in March of 1970, McKinney adopted several other annexation ordinances. These ordinances were based on the premise that McKinney's pre-existing boundaries were as set forth in ordinance 472, as modified by ordinance 478.[4] Un-

less Fairview is correct that the 1979 validation act validated its ordinance 70–05–4847 from its inception in 1970, McKinney's additional annexations extended its ETJ to include all of the disputed tracts at a time before Fairview's ETJ would have extended to include a portion of them.

In 1999, McKinney adopted an ordinance purporting to annex two of the three disputed tracts. McKinney filed this suit in October 2000, seeking a declaratory judgment and injunction regarding the validity of several of Fairview's annexation ordinances. Fairview counterclaimed for declaratory relief, challenging several of McKinney's annexation ordinances.

The parties entered into an agreed judgment setting the boundary line between the two municipalities and resolving all boundary issues between them, *except* for the determination of the parties' jurisdiction over the three contiguous tracts of land located near the agreed borders and all claims necessary for that determination. The trial court signed the agreed judgment and severed that judgment from this proceeding, making it final.

Thereafter, and after a non-jury trial, the trial court signed a final judgment in favor of McKinney, as described above. Fairview's motions for new trial and to modify the judgment were overruled by operation of law. Fairview appeals.

## STANDARD OF REVIEW

The trial court did not file any findings of fact, and none of the parties requested

the legislature passed the Municipal Annexation Act "to curb the virtually unlimited power of home rule municipalities to unilaterally annex territory." *Id.* (quoting *Laidlaw Waste Sys., Inc. v. City of Wilmer,* 904 S.W.2d 656, 663 n. 1 (Tex.1995)).

3. The act provided that overlaps in the ETJ of nearby cities would be resolved by agreement or by court apportionment. *See* Tex. Loc.

Gov't Code Ann § 42.901(a). The overlapped ETJs of McKinney and Fairview are not at issue in this appeal.

4. In *May v. City of McKinney,* 479 S.W.2d 114 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.), we upheld these annexations against a private challenge that they were void because the territory annexed was not adjacent to McKinney.

the court to do so. Thus, we assume the trial court impliedly made all findings necessary to support its judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990). We affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *Id.* Fairview does not challenge the sufficiency of the evidence to support the trial court's judgment. It challenges only the legal results flowing from the facts.

## DISCUSSION

### A. First Issue: Validity of McKinney Ordinance 472

Fairview's first issue asserts the trial court erred by ruling in favor of McKinney because McKinney's claim to the disputed tracts is based on ordinance 472, which Fairview contends is void as a matter of law for two reasons. Fairview describes the questions presented in its first issue as questions of law subject to de novo review.

#### 1. Boundary Description

■ Fairview's first challenge to ordinance 472 is that the metes and bounds description of the annexed property set forth in the ordinance does not close. *See Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 438 (Tex.1991) (attempted annexation ordinance void if ordinance description of annexed territory boundary line does not close, citing *State ex rel. Rose v. City of La Porte,* 386 S.W.2d 782, 789 (Tex.1965)).

Without objection, the trial court admitted into evidence two versions of ordinance 472. Both versions were contained in McKinney's records and no objection was made to either document.[5] However, the two versions differ as to their descriptions of the property being annexed. One version, a copy of ordinance 472 as contained in a "boundary file" maintained by the city, contains a metes and bounds description that closes. The other version is a copy of the ordinance as contained in a bound volume of ordinances kept in the city's vault. It is undisputed that the metes and bounds description on this "vault copy" is missing a call contained in the boundary-file version,[6] and that its property description fails to close.

Fairview contends the vault copy of ordinance 472 controls as a matter of law over the boundary-file version of the ordinance. Its position is based on a provision in McKinney's city charter, which at the time stated:

> Every ordinance ... has to be enrolled by the Secretary or such other officer.... It shall then be carefully compared with the ordinance and all amendments, if any, by the city attorney and at least one member of the board of commissioners.... If no errors exist, ... the city attorney shall endorse on the margin the words "correctly enrolled," and give the date thereof and subscribe his name thereto.... All ordinances of the city, when printed and published and bearing on the title page thereof "Ordained and published by the Board of Commissioners of the City of McKinney," or words of like import, shall be prima facie evidence of their authenticity and shall be admitted and received in all courts and places without further proof.

MCKINNEY, TEX., CITY CHARTER, art. II § 4 (Sept. 30, 1913). Fairview's argument is as follows: (1) the vault copy is the "en-

---

5. Fairview's complaint in its reply brief that there was no proof of the signatures of the mayor and city secretary on the boundary-file copy comes too late.

6. The missing call is located along the putative east boundary of McKinney, some distance away from Fairview's then-existing boundary to the south.

rolled" version of ordinance 472 because, unlike the boundary-file version, it bears the handwritten signature of the city attorney indicating that it has been "correctly enrolled"; (2) as the "enrolled" version of ordinance 472, the vault copy controls as a matter of law over any other evidence as to its content, including the boundary-file version of the ordinance; and (3) because the boundary description in the vault copy does not close, ordinance 472 is void as a matter of law.

We reject Fairview's argument. First, Fairview conflates the charter's requirements that an ordinance be noted as "enrolled" with the separate requirements for an ordinance to constitute prima facie evidence of its contents: namely, that it be "printed and published" and that it contain on its title page the "ordained and published" phrase (or words of like import) specified by the charter.[7]

■ Second, "[p]rima facie evidence is merely that which suffices for the proof of a particular fact until contradicted and overcome by other evidence." *Dodson v. Watson*, 110 Tex. 355, 358, 220 S.W. 771, 772 (1920). Even though the charter language gives rise to a presumption that a copy of an ordinance is authentic if it meets certain requirements, by the charter's own terms that presumption is not conclusive. Thus, assuming the vault copy is a "printed and published" version of ordinance 472 (and the boundary-file version is not), it is at most "prima facie" evidence, not conclusive evidence, of the ordinance's contents. As a result, the trial court was not prohibited from considering the boundary-file version.

Fairview argues its position is also supported by the enrolled bill rule. Citing *Nueces County v. King*, 350 S.W.2d 385, 387 (Tex.Civ.App.-San Antonio 1961, writ ref'd) and *Ellison v. Texas Liquor Control Board*, 154 S.W.2d 322, 326 (Tex.Civ.App.-Galveston 1941, writ ref'd), Fairview asserts that when the voters adopted McKinney's city charter in 1913 (and also when McKinney adopted ordinance 472 in 1958), "the strict law was that enrolled versions of legislative enactments are conclusively presumed to be the true version and that courts could not inquire beyond the enrolled version."

The supreme court last addressed the enrolled bill rule in *Association of Texas Professional Educators v. Kirby*, 788 S.W.2d 827 (Tex.1990). There the court described the rule as follows:

The enrolled bill rule provides that the "enrolled statute," as authenticated by the presiding officers of each house, signed by the governor (or certified passed over gubernatorial veto), and deposited in the secretary of state's office, is precisely the same as and a "conclusive record" of the statute that was enacted by the legislators.... Under the strict enrolled bill rule, the House and Senate Journals are not more reliable records of what occurred than the enrolled bill, and no extrinsic evidence may be considered to contradict the enrolled version of the bill.

*Id.* at 829 (citations omitted).[8] The court criticized the rule as "contrary to modern legal thinking, which does not favor conclusive presumptions that may produce re-

---

7. We note both versions of ordinance 472 substantially (and equally) comply with the city charter's requirement that an ordinance must, inter alia, contain the "ordained and published" phrase (or words of like import) to constitute prima facie evidence of the ordinance's terms.

8. *See also* BLACK'S LAW DICTIONARY (7th ed.1999) (under definition of "bill," defining "enrolled bill" as "A bill passed by both houses of the legislature and signed by their presiding officers.").

sults which do not accord with fact." *Id.* It avoided doing away with the rule by creating and applying an exception to "avoid elevating clerical error over constitutional law." *Id.* at 830. However, the court stated that the "present tendency favors giving the enrolled version only prima facie presumptive validity." *Id.* at 829.

 In contrast to the enrolled bill rule, which applies to state legislation, the general rule applicable to municipal ordinances is that they need not be recorded to be effective. *See Sw. Lloyds v. City of Wheeler,* 130 Tex. 492, 496, 109 S.W.2d 739, 741 (1937); *W. Tex. Constr. Co. v. Doss,* 59 S.W.2d 866, 869 (Tex.Civ.App.-Eastland 1932), *aff'd,* 128 Tex. 339, 96 S.W.2d 1116 (1936). Charter provisions requiring recording of ordinances are normally directory only and failure to follow them does not invalidate an ordinance. *See Doss,* 59 S.W.2d at 869 (quoting 2 DILLION MUNICIPAL CORPORATIONS § 607, "[T]he validity of an ordinance is not affected by the omission of the clerk to copy it into the record, or by the fact that it was not correctly copied into the record.").

In light of *Kirby's* criticism of the enrolled rule bill and the existence of a different, established rule relating to municipal ordinances, we decline to expand the enrolled rule bill to apply to municipal ordinances.[9]

We conclude the vault copy is not conclusive proof of the contents of ordinance 472, and thus not conclusive and binding proof as to whether the property description in that ordinance closes. There is evidence to support the trial court's implied finding that the boundary-file version of ordinance 472 accurately and sufficiently describes the territory McKinney sought to annex, and that ordinance 472 is not void because its property description does not close. We reject Fairview's argument to the contrary.[10]

2. Encroachment by Ordinance 472 and Effect of Ordinance 478

 Even if the boundary description in ordinance 472 closes, Fairview argues the ordinance is still "void ab initio" because its boundary description included the 600–

**9.** Even if we were to apply the enrolled bill rule, Fairview's argument would be unavailing. Despite the city attorney's signature indicating the vault copy of ordinance 472 is "correctly enrolled," there is ample evidence to support the implied finding that the boundary-file version is the enrolled version of the ordinance and that the vault copy is a subsequent printing or reprinting, and thus that the boundary-file version controls.

The vault copy of ordinance 472 contains only one handwritten signature, that of the city attorney indicating that it has been "correctly enrolled." All other blanks and signature lines on the vault copy are filled in by typewritten text. In contrast, the boundary-file version contains blanks for inserting the ordinance number in its heading and in the paragraph indicating the motion to introduce the ordinance (i.e., its first reading) passed; both blanks are filled in with the handwritten number "472." It also contains blanks for the names of the commissioners moving and

seconding the ordinance's introduction at its first reading and its passage at the third and final reading; these blanks are also filled in by handwritten names. (The names of the commissioners moving and seconding the passage of the ordinance at its second reading are typewritten.) The boundary-file version also bears the handwritten signatures of the mayor and the city secretary in three places, signing and attesting (respectively) to the passage of the motion to introduce the ordinance, as well as the passage of the ordinance at both its second and final readings.

**10.** As a result, we need not address McKinney's argument that even if the vault copy of ordinance 472 controls, its boundary line can be ascertained based on a "reasonable construction of the ordinance as a whole," citing *City of Missouri City v. Senior,* 583 S.W.2d 444, 447 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.), and thus ordinance 472 is not void as a result of the missing call. *See* TEX.R.APP P. 47.1.

foot strip already contained within Fairview's city limits. McKinney does not dispute that ordinance 472 encroached on Fairview's city limits. However, it points out that less than two months after ordinance 472 was adopted, it adopted ordinance 478. That ordinance described the 600-foot strip by metes and bounds, and stated that the described strip was disannexed from the City of McKinney and that "the corporate limits of the City of McKinney, Texas, are hereby altered to exclude the said property and territory."

■ It is well-established that one city has no authority to annex the territory of another. *See City of Houston v. State ex rel. City of West Univ. Place,* 142 Tex. 190, 192–93, 176 S.W.2d 928, 929–30 (1943) ("The only limitation on the city's power to annex additional territory is that it shall be adjacent thereto and not a part of any other municipality...."); *Beyer v. Templeton,* 147 Tex. 94, 101, 212 S.W.2d 134, 138 (1948) ("Neither does a municipal corporation have power to annex contiguous territory embraced within the territorial boundaries of another validly existing municipal corporation."). Thus, we have no trouble concluding that ordinance 472 is void—and void ab initio—to the extent it sought to annex the 600-foot strip.

But is ordinance 472 void in its entirety? Fairview does not argue McKinney lacked authority to annex the other territory—not within Fairview's city limits—described in ordinance 472. Neither does Fairview assert any other basis [11] for contending that ordinance 472 was void in its entirety.

■ There are several reasons why the answer to this question is not immediately clear. First, courts have rarely needed to address this question directly. Finding an

annexation void in part usually would require the court to determine "just what part of the territory less than the whole of what the city had attempted to annex the governing body would wish to incorporate within the city limits." *City of West Univ. Place,* 142 Tex. at 195, 176 S.W.2d at 931 (quoting with approval the lower court's opinion in *City of Houston v. State ex rel. City of West Univ. Place,* 171 S.W.2d 203, 208 (Tex.Civ.App.-Galveston 1943)). This is a task beyond the authority of the judicial branch, as it is well established that the "power of a Home Rule City to annex territory, being legislative power, is therefore not subject to being revised by the judicial power of the courts." *City of West Univ. Place,* 142 Tex. at 195, 176 S.W.2d at 931.

For example, in *State ex rel. American Manufacturing Co. v. City of Fort Worth,* 314 S.W.2d 335 (Tex.Civ.App.-Fort Worth 1958, no writ), the court of civil appeals concluded that a Fort Worth annexation ordinance was "invalid *in so far* as it attempted to annex territory previously annexed by Saginaw." *Id.* at 337 (emphasis added). However, the court went on to hold the ordinance was *"totally ineffective,"* *id.* at 338 (emphasis added), rejecting Fort Worth's argument (similar to that presented by McKinney here) that the rest of the annexation—minus the Saginaw property—could be upheld. The rationale supporting its holding was that (1) the annexation ordinance was not subject to being severed into parts, and (2) reforming the ordinance was beyond the judiciary's authority:

> Since [the annexation ordinance] was invalid as to a portion of the area attempted to be annexed, we think it was invalid as a whole. The whole ordinance

---

11. Other than its argument relating to the metes and bounds description set forth in

ordinance 472, which we have rejected.

pertained to no one single matter, i.e., the annexation of one certain described tract of land. As said by the Supreme Court in *City of Wink v. Griffith Amusement Co.*, 129 Tex. 40, 100 S.W.2d 695, 698, " \* \* \* since sections 1 and 3 of the ordinance were void \* \* \*, the whole ordinance was void, all sections being interdependent and related to these sections."

Had Fort Worth known such territory had been annexed previously by Saginaw, it might or might not have annexed the remaining area, or it might or might not have annexed a part of the territory not included in the Town of Saginaw. That is a matter for the City Council of the City of Fort Worth to determine.

To be effective as to the territory exclusive of the Saginaw annexation, the ordinance would have to be reformed. An ordinance may not be reformed by judicial action.

*Id.* at 337. Thus the court did not reach whether the ordinance was void in whole *because* it partly exceeded Fort Worth's annexation authority.

▆▆▆▆ The second reason the law is not immediately clear on this question is because the legal issue presented in most annexation cases is whether a private-party plaintiff has standing to complain of the annexation. Generally, the only appropriate mechanism for challenging an annexation is a quo warranto proceeding. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 658 (Tex.1995) (citing *Alexander Oil*, 825 S.W.2d at 436). An exception to this rule permits private parties who are directly affected to collaterally attack a void incorporation or annexation. *City of West Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722, 727 (Tex.1971). Private parties may not, however, attack an annexation that is merely voidable. *See City of Balch Springs v.*

*Lucas*, 101 S.W.3d 116, 120 (Tex.App.-Dallas 2002, no pet.) (distinguishing between annexations challenged as unauthorized by law or color of law and those challenged as mere irregular exercise of power; quo warranto required to set aside annexation unless it is void); *City of San Antonio v. Hardee*, 70 S.W.3d 207, 212 (Tex.App.-San Antonio 2001, no pet.) (private parties have no standing to challenge annexation as voidable, as opposed to void). Thus, most annexation challenges hinge—not on whether the annexation is attacked as void in whole or in part—but on whether the complaint asserted, if sustained, would render the ordinance void or voidable. As a result, these cases usually do not address directly whether an ordinance that partially exceeds a municipality's annexation authority is void in whole or in part.

However, in an attempt to distinguish between whether a complaint would render the ordinance void as opposed to merely voidable, many of these standing cases use the phrase "wholly void," "void ab initio," or similar language. Taken out of context, this phrasing can be taken to mean that an annexation that partially exceeds a municipality's authority is-for that reason-void in whole and not void in part.

The principal source for much of the "wholly void" language used in other cases is *Alexander Oil*, the main case Fairview cites in support of its contention that because part of ordinance 472 is void in part, it is all void. However, *Alexander Oil* did not present, and the court did not directly address, whether an annexation that *partially* exceeds the municipality's annexation authority is void in part or in whole. There, the plaintiff attacked the City of Seguin's annexation ordinance based on alleged procedural irregularities in the annexation process, specifically: inadequate notice of a public hearing, lack of a quorum at a hearing, and want of a proper presen-

tation of a service plan for the territory sought to be annexed. *Alexander Oil Co.*, 825 S.W.2d at 436.[12] In deciding whether these claims could be asserted by a private party, the supreme court started with the premise that a city's annexation of territory may be attacked only by quo warranto "unless the annexation is wholly void." *Id.*

In summarizing Texas case law on standing to challenge annexation ordinances, *Alexander Oil* observed:

Historically, private challenges of annexation ordinances have been sustained and the ordinance held void in the following instances: an annexation of territory exceeding the statutory size limitations, *Deacon v. City of Euless*, 405 S.W.2d 59, 64 (Tex.1966); an attempted annexation of territory within the corporate limits of another municipality or which was not contiguous with its own limits, *City of West Orange v. State ex rel. City of Orange*, 613 S.W.2d 236, 238 (Tex.1981); *City of Waco v. City of McGregor*, 523 S.W.2d 649, 652 (Tex. 1975); an attempted annexation in which the boundary of the annexed territory did not close using the description contained in the ordinance, *State ex rel. Rose v. City of La Porte*, 386 S.W.2d 782, 789 (Tex.1965). *The common trait in these cases is whether the municipality exceeded the annexation authority delegated to it by the legislature.*

*Id.* at 438 (emphasis added). The court then agreed with Seguin that procedural irregularities, such as those asserted by the plaintiff, would render the annexation voidable, not void, and thus could not be asserted by a private party. *Id.* at 439. The court then concluded: "The complaints raised by Alexander were insufficient to support its claim that the City's annexation of Alexander's land was void, because it violated Legislative restrictions." *Id.*

Despite the court's use of the phrase "wholly void," *Alexander Oil* did not decide the standing issue based on whether the plaintiff's procedure-based claims, if proved, would result in the annexation being set aside in whole versus in part. (Indeed, if the state had taken up the plaintiff's claims and pursued them successfully, presumably Seguin's annexation ordinance would have been set aside completely.) Rather, the dispositive question was whether the plaintiff attacked Seguin's annexation authority and thus asserted grounds on which the ordinance could be held void as opposed to voidable. *See id.* Thus, in the context of the facts and the legal issue presented, it appears the opinion in *Alexander Oil* used the phrase "wholly void" to distinguish between complaints that would render an annexation void (and thus subject to collateral attack by private parties), and complaints that would render an annexation voidable (and thus assertable only through quo warranto). We disagree with Fairview's argument that *Alexander Oil* is authority for its position that, because ordinance 472 was void in part, it was (to use *Alexander Oil's* phrase) "wholly void" and thus not effective to annex anything.[13]

---

**12.** The other case cited by Fairview, *City of Wichita Falls v. Pearce*, 33 S.W.3d 415 (Tex. App.-Fort Worth 2000, no pet.), also involved a claim to set aside an annexation ordinance based on an inadequate service plan. *Id.* at 417. As the Fort Worth court's opinion in *Pearce* relied wholly on the supreme court's opinion in *Alexander Oil*, we will not discuss it further.

**13.** Neither party contends Fairview was required to follow the quo warranto procedure in this case. It is clear Fairview's allegations that McKinney's ordinance 472 is void because the description does not close and because it annexes territory within the limits of another municipality permit this suit to continue without a quo warranto proceeding un-

We have also reviewed the cases *Alexander Oil* cited in connection with use of the phrase "wholly void." *Id.* at 436. Only two of these cases, *Hoffman v. Elliott*, 476 S.W.2d 845, 846 (Tex.1972) (per curiam), and *Kuhn v. City of Yoakum*, 6 S.W.2d 91, 92 (Tex. Comm'n App.1928, judgm't adopted), use that phrase in discussing the validity of annexation ordinances or statutes. We do not conclude they address (or offer guidance as to) whether an ordinance that partially exceeds a municipality's annexation authority is void in whole or in part.[14]

Citing *Alexander Oil*, this Court recently stated a private party may not attack the validity of an annexation ordinance "unless the annexation is wholly void." *Town of Fairview v. Lawler*, 252 S.W.3d 853, 856 (Tex.App.-Dallas 2008, no pet.). Similarly, in an earlier case this Court described attempts to annex property located within another municipality as "wholly void and not merely voidable," as "invalid as a whole," and as "absolutely void." *City of Irving v. Callaway*, 363 S.W.2d 832, 835, 837 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.).[15] However, neither *Callaway* nor *Lawler* presented the issue of whether an annexation that partially exceeded the municipality's annexation au-

---

der the exceptions discussed in *Alexander Oil*, 825 S.W.2d at 438.

**14.** In *Hoffman*, the petitioners unsuccessfully sought a writ of mandamus from the trial court and court of appeals to compel the county judge to call an incorporation election. The petitioners contested whether the area they sought to incorporate lay within the City of Houston's ETJ, contending Houston's annexation ordinance extending its ETJ into that area was void. *Hoffman*, 476 S.W.2d at 846. In denying the petitioners' application for writ of error, the court stated: "If the annexation be wholly void because not authorized by law or color of law, a collateral attack is permissible by private parties who suffer some burden peculiar to themselves." However, the court concluded the petitioners lacked standing for the same reason the private-party plaintiffs lacked standing in *West Lake Hills*. *Hoffman*, 476 S.W.2d at 846. In turn, the private parties in *West Lake Hills* lacked standing because even though they attacked the incorporation or annexation as being void, they did not suffer any "burden peculiar" to themselves, such as the imposition of taxes or the diminution of their property values. *West Lake Hills*, 466 S.W.2d at 727. (*West Lake Hills* will be discussed in more detail herein.) Thus, the court's decision in *Hoffman* did not turn on whether the ordinance at issue was "wholly void" or void in part.

In *Kuhn*, the court used the phrase "wholly void" in describing another case, *Parks v. West*, 102 Tex. 11, 111 S.W. 726 (1908), which involved a successful suit by landowners to enjoin an independent school district created under an unconstitutional statute from issuing bonds and levying special taxes to pay for them. *Parks*, 102 Tex. at 14, 111 S.W. at 726–27. The court distinguished its case from *Parks* as follows:

> Here it is not claimed that the independent school district of the city of Yoakum was not a valid corporate entity clothed with full and complete power to annex the territory involved. . . . In the *Parks* case the district which attempted to levy a tax against the complaining property owners was without legal power to act in the premises. Its action was therefore wholly void and subject to collateral attack.

*Kuhn*, 6 S.W.2d at 91–92. Thus, *Kuhn* used the phrase "wholly void" to describe a situation (in *Parks*) in which the private party-plaintiffs in fact attacked the entire authority—indeed the legality—of the governmental entity involved. The court's decision in *Kuhn* did not turn on whether the ordinance at issue was "wholly void" or void in part.

**15.** *Callaway* also stated such an annexation was invalid as a whole, but it did so citing *American Manufacturing Co. See Callaway*, 363 S.W.2d at 837. As noted previously, that holding was based on the general principle that a municipal annexation ordinance was legislative in nature, and thus could not be reformed by judicial action. *See Am. Mfg. Co.*, 314 S.W.2d at 337.

thority was void in whole or in part.[16] Thus, we decline to hold that our language in these cases is dispositive of the issue.

Moreover, in 1971, the supreme court directly addressed a question very similar to the one facing us. Specifically, in *West Lake Hills* the court confronted whether a city's original incorporation, which exceeded its authority by seeking to incorporate noncontiguous territories, was void in whole or in part. *West Lake Hills*, 466 S.W.2d at 728.

As described in the original field notes of the incorporation of West Lake Hills, the bulk of its incorporated territory lay south of Bee Creek, which flowed eastward into Lake Austin. However, the notes also included a strip of territory north of Bee Creek, between West Lake Drive on the west and the Austin city limits on the east. *Id.* at 725, 728. Austin's city limit in that area was defined by elevation and included Lake Austin; West Lake Hills's incorporation documents assumed that the contour line defining Austin's boundary (and thus West Lake Hills's east boundary line) was the same elevation as the lake dam. At trial, however, it was shown that the contour line defining Austin's city limit was higher than the dam and that it crossed over West Lake Drive at Bee Creek and at several points north of the creek. *Id.* at 728.

Thus, the east line of West Lake Hills's boundary description (i.e., Austin's city limit) actually crossed over the west line of West Lake Hills's boundary description in several places, creating gaps in the contiguity of the territory described. *Id.* Because of these gaps, the supreme court "agree[d] with the lower courts that West Lake Hills cannot be upheld in its original form." *Id.* The court then addressed a

question very similar to the one presented in this case:

> The question then becomes *whether part of the territory originally described is to be invalidated or whether the entire incorporation is to fail.* As indicated in *City of Irving v. Dallas County Flood Control District,* 383 S.W.2d 571 (Tex.Sup.1964), the drawing of the lines of a municipality is a legislative function. The court is not asked to draw a line here; the Austin city limit line breaks the adjacency of the territory and West Lake Hills cannot exist as it was planned and described. It must either suffer the loss of the area along Lake Austin, or suffer the loss of the bulk of the area to the south of Bee Creek, or the very existence of the village must be vitiated.

*Id.* (emphasis added).

The court observed that West Lake Hills's original incorporation territory north of Bee Creek was "no more than a fringe of land lying between the road nearest to the lake and a contour line which cannot be located without a surveying party." *Id.* It also noted the trial court's finding that the bulk of West Lake Hills's territory, located south of Bee Creek, was unrelated to the territory north of the creek, and noted the evidence about difficulties with law enforcement in and the provision of city services to the fringe area. It then concluded:

> The fringe north of Bee Creek is not so essential to the city as to prevent the lifesaving separation. Because of the comparative insignificance of the fringe and because of the sixteen years of continuous operation of the municipality, the City of West Lake Hills is upheld in

**16.** *Callaway* was decided before the supreme court's opinion in *West Lake Hills,* which is discussed in more detail herein.

the large contiguous area south of Bee Creek.

*Id.*[17]

Thus, *West Lake Hills* addressed the same issues addressed by the Fort Worth court of appeals in *American Manufacturing.* However, it concluded that under the facts presented, holding the incorporation void in part did not violate the general principle that an incorporation or annexation ordinance cannot be reformed by judicial action. *West Lake Hills,* 466 S.W.2d at 728. Additionally, unlike *American Manufacturing,* the supreme court determined that the comparative insignificance of the territory West Lake Hills improperly sought to incorporate (in comparison to the remainder of its territory), as well as the length of time during which West Lake Hills had exercised de facto control over its remaining territory, justified upholding the municipality's incorporation as to the territory within its incorporating authority. *Id.*

Fairview attempts to distinguish *West Lake Hills* because the boundary described by West Lake Hills did not actually encroach on the Austin city limits. This is a distinction without a difference: the supreme court was still faced with the issue of the partial validity of a municipality's boundary lines, albeit as described in its incorporation documents. The court concluded that the city's original incorporation could be annulled as to part of the territory described in the incorporation documents, and upheld as to the rest of the territory. *Id.*

Based on the supreme court's holding in *West Lake Hills,* we conclude that if a portion of a municipality's boundary is invalid, the remainder of the boundary may be upheld if the facts warrant it and if the court can do so without usurping the legislative authority of a home-rule city to draw its boundaries. *See id.* On this reasoning, we conclude that if a municipality's annexation exceeds its annexation authority in part, the portion of the annexation within the municipality's annexation authority may be upheld if the facts warrant it and if the court can do so without usurping the legislative authority of a home-rule city to draw its boundaries. *See id.*

Here, the circumstances supporting upholding ordinance 472 in part are stronger than those the supreme court found sufficient to support upholding in part of the incorporation of West Lake Hills. Exercising its legislative power to draw its boundaries, McKinney enacted ordinance 472 in 1958. However, it exceeded its authority as to the 600–foot–wide strip of land that overlapped Fairview's boundaries. Less than two months later, McKinney adopted ordinance 478 in an effort to eliminate the relatively small (in comparison to its total territory) strip.[18] For forty years thereafter, McKinney has operated under the presumption that it had validly annexed the property described in ordinance 472, less the 600–foot strip.

To declare ordinance 472 void in whole would return McKinney to its boundary in 1958 before adoption of the ordinance. Without citing authority, Fairview con-

17. The court went on to hold several West Lake Hills's annexation ordinances void for lack of contiguity or adjacency. *Id.* at 729.

18. The record does not indicate Fairview challenged ordinance 472 during the two-month period between the adoptions of ordi-

nances 472 and 478. According to McKinney's brief, Fairview did not attack ordinance 472 on the basis of the encroachment until 2000, when it filed counterclaims in this lawsuit.

tends McKinney's city limits would not be affected by declaring ordinance 472 void in whole because of the agreed judgment entered in the severed portion of this lawsuit. However, if ordinance 472 is completely void as Fairview contends, it is void as to all its described boundaries—not just those to the south of McKinney towards Fairview. Fairview does not address how the agreed judgment between it and McKinney concerning their shared border could save McKinney's other boundaries.

> Moreover, Fairview's brief also states:
>
> [I]f a newly annexed area relies on a previous annexation for contiguity and the previous ordinance is void, then the more recent ordinance is also void.... Put simply, if an earlier "link in the chain" is broken by a void ordinance, all subsequent ordinances in the chain are also void. Further, once the lack of contiguity renders the ordinance void, the lack of contiguity cannot be cured by a subsequent annexation of an area which touches the area and the municipal boundary.... In other words, the invalidity cannot be cured by "filling in the gaps" after the fact.

(Citations omitted.) Thus, declaring ordinance 472 void in whole could also impact the legality of McKinney's subsequent annexations based on that ordinance's boundaries, as well as the existence, timing, and extent of McKinney's ETJ based on those boundaries and its subsequent annexations. Thus, we conclude based on the undisputed evidence that the circumstances support upholding McKinney's ordinance 472 in part. *See West Lake Hills*, 466 S.W.2d at 728.

Additionally, as did the supreme court in *West Lake Hills*, we conclude that holding McKinney's annexation ordinance 472 void in part does not run afoul of the general principle that such an ordinance, being legislative in nature, cannot be reformed by judicial action. Once McKinney determined ordinance 472 exceeded its annexation authority in part, it enacted ordinance 478 in an attempt to "fix" the overstep of its legislative authority in ordinance 472. Ordinance 478 described the 600–foot–wide strip by metes and bounds, declared that it was "disannexed" from McKinney, and further declared that "the corporate limits of the City of McKinney ... are hereby altered to excluded the said property and territory." We conclude under the facts of this case that ordinance 478 is evidence sufficient to indicate McKinney's legislative intent as to what lesser portion of the territory set forth in ordinance 472 it wished to include within its boundaries, namely: all of it except the 600–foot–wide strip. Because McKinney—not the courts—made that determination by adopting ordinance 478, neither the trial court nor this Court is asked to redraw the boundary. Holding ordinance 472 void only in part, in recognition of this statement of McKinney's legislative intent, would not constitute the use of judicial power to reform legislation. *See West Lake Hills*, 466 S.W.2d at 728.

Fairview asserts ordinance 478 is ineffective to "cure" the defect in ordinance 472. It argues that ordinance 478 was ineffective to disannex the 600–foot strip because "there can be no effective disannexation ... of an area which was never part of the incorporated area of the municipality to begin with." For support Fairview cites *State ex rel. Ratcliff v. City of Hurst*, 458 S.W.2d 696, 700 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.).[19]

---

19. At oral argument Fairview asserted that in order to remedy ordinance 472's inclusion of the 600–foot strip, McKinney had to pass-not a disannexation ordinance-but a new annexation ordinance restating the metes and bounds of the territory described by ordi-

We need not—and do not—decide whether ordinance 478 is effective to "cure" the defect in ordinance 472. As noted above, we conclude only that ordinance 478 is sufficient to avoid placing the courts in the untenable position normally resulting from declaring an annexation ordinance void in part-the use of the judicial power to revise the ordinance by determining "just what part of the territory less than the whole of what the city had attempted to annex the governing body would wish to incorporate within the city limits." *See City of West Univ. Place,* 142 Tex. at 195, 176 S.W.2d at 931.

Thus, we conclude ordinance 472 is void ab initio to the extent—and only to the extent—it sought to annex territory located within the then-existing city limits of Fairview. We sustain Fairview's first issue to that extent and overrule it to the extent it asserts the ordinance is void in whole.

### B. Second issue: Fairview's claim to the disputed tracts even if Ordinance 472 is valid.

 Fairview bases its claim to a portion of the disputed tracts on its ordinance 70-05-4847, which sought to annex territory that adjoined the disputed tracts but that was not contiguous to Fairview. This ordinance was adopted on February 3, 1970, before McKinney's March 1970 annexation ordinances extended its ETJ to include the disputed tracts. Fairview admits its annexation ordinance was void when adopted because the territory was not contiguous or adjacent to Fairview, but contends the extension of its boundary was validated by the 1979 validation act, and this validation made the ordinance valid from its inception. *See* Act of May 25, 1979, 66th Leg., R.S., ch. 473 § 4, 1979 Tex. Gen. Laws 1043, 1044 (stating attempted annexations before January 1, 1975 cannot be held invalid because the territory was not contiguous or adjacent to the municipality). We agree Fairview's annexation ordinance was validated, but not as of the inception of the ordinance.

This issue turns on a construction of the 1979 validation act. The language of the validation act does not support Fairview's argument. The statute validated both the incorporation proceedings of municipalities and the boundary lines of covered municipalities. As to the former, the statutory language validates the incorporation proceedings of each municipality "in all respects *as of the date on which they occurred.*" Act of May 25, 1979, 66th Leg., R.S., ch. 473 § 3, 1979 Tex. Gen. Laws 1043, 1043 (emphasis added).[20] However, the statutory provision validating the boundaries of the covered municipalities does not include the "as of the date on which they occurred" language.[21]

---

nance 472, as modified to exclude the 600–foot–wide strip that lay within Fairview.

**20.** Earlier validation acts contained similar language validating incorporation proceedings and governmental proceedings of municipalities as of the date of the proceedings. *See, e.g.,* Act of April 28, 1965, 59th Leg., R.S., ch. 160, §§ 1, 3, 1965 Tex. Gen. Laws 342. Like the 1979 act, these acts did not validate the boundaries of the covered municipalities as of the date they were adopted. *Id.* § 2.

**21.** *See* Act of May 25, 1979, 66th Leg., R.S., ch. 473 § 4, 1979 Tex. Gen. Laws 1043, 1043–44:

> Sec. 4. (a) The original boundary lines of each municipality covered by this Act and any extension of those boundaries adopted before January 1, 1975, *are validated in all respects,* even though the action adopting the original boundaries or an extension of them was not in accordance with law.
>
> (b) Without limiting the generality of Subsection (a) of this section, it is expressly provided that an attempted annexation that

The supreme court has recognized this distinction, holding that a validation act did not validate a void strip annexation ordinance until after the adjacent city obtained ETJ over the area. *City of West Orange*, 613 S.W.2d at 239. In *West Orange*, the supreme court concluded Orange's 1960 ordinance annexing a fifteen-foot-wide strip of land was invalid because the territory was not adjacent to Orange. *Id.* at 238. The court also concluded the ordinance was not validated by later validation acts because, among other reasons, doing so would extend Orange's boundary into West Orange's ETJ, even though the Orange annexation ordinance was adopted *before* ETJ was created. The court explained:

> The Orange annexation came before there was such a thing as extraterritorial jurisdiction. However, the earliest validating act urged by Orange was effective in 1965, well after West Orange had acquired its extraterritorial jurisdiction. *Since the 1960 Orange annexation was void at least until the 1965 validating act, it stands in no better position than if it had first been passed in 1964.* If it had first been passed in 1964 it would have at that time included part of West Orange's extraterritorial jurisdiction.

occurred before January 1, 1975, may not be held invalid because it did not comply with the Municipal Annexation Act, as amended (Article 970a, Vernon's Texas Civil Statutes), or any other applicable law, or because the territory the municipality attempted to annex was not contiguous or adjacent to the then existing boundaries of the municipality, or because the municipality was not petitioned for annexation by the owners or residents of the annexed territory.

(Emphasis added.)

22. The validation statutes discussed in *West Orange* provided that the boundary lines, in-

*Id.* at 239 (emphasis added). Thus, it is clear the supreme court did not construe the validating statutes as validating the boundary as of the date the ordinance was originally adopted, i.e., in 1960 before West Orange acquired ETJ over the area.[22]

Because Fairview's 1970 ordinance was void at least until the 1979 validating act, we conclude Fairview stands in no better position than if the ordinance had first been passed at that time, long after the 1970 McKinney ordinances extended its ETJ to cover the disputed tracts. *See id.* at 239.[23] Thus, the 1979 validation act did not validate the Fairview ordinance to the extent it would have extended Fairview's ETJ into McKinney's then-existing ETJ. *Id.* ("the validating acts do not cover the extension of a boundary line by annexation into the extraterritorial jurisdiction of another city") (citing *City of McGregor*, 523 S.W.2d at 653–54). We overrule Fairview's second issue.

## CONCLUSION

We conclude as a matter of law that McKinney's ordinance 472, as evidenced by the boundary-file version of the ordinance, is void in part. Specifically, it is void to the extent it attempted to annex the 600–foot strip that was located within Fairview's city limits (and that was subsequently described by McKinney's ordi-

cluding both the original incorporation and any subsequent extension "are hereby in all things validated." *West Orange*, 613 S.W.2d at 238–39.

23. Fairview cites *City of The Colony v. City of Frisco*, 686 S.W.2d 379, 380–81 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.), and *State ex rel. Danner v. City of Watauga*, 676 S.W.2d 721, 724 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.), to support its argument that its February 1970 ordinance is valid from its inception. Neither opinion expressly holds that annexation ordinances are validated as of their inception, and they are not controlling authority in light of *West Orange*.

nance 478). Thus, the trial court erred by holding that McKinney's ordinance 472 "establishes the boundary upon which McKinney's original extraterritorial jurisdiction is based and is valid." Further, based on the circumstances presented here, we conclude the courts are not prohibited from upholding ordinance 472's annexation of the remainder of the territory described therein. We also conclude that Fairview's ordinance 70–05–4847 was not validated prior to the effective date of the 1979 validation statute. By that time, however, McKinney had already acquired ETJ over all of the disputed tracts, and thus the validation statute did not extend Fairview's ETJ over any portion of those tracts.

Thus, we modify the trial court's judgment to reflect that ordinance 472's annexation of territory is valid except for that portion of the territory already within Fairview's city limits—the 600–foot–wide strip of territory described by ordinance 478. As modified, we affirm the trial court's judgment.